## ATLANTA LIFE INS. CO. v. COXSON.

### No. 13470.

Court of Civil Appeals of Texas. Dallas.

Dec. 10, 1943.

Rehearing Denied Jan. 14, 1944.

BOND, Chief Justice.

This suit involves a policy of life insurance issued by appellant on March 3, 1941, on the life of Rustine Fredrick. Appellee's wife, Ida Bell Coxson, sister of the deceased, was the named beneficiary in the policy, and on her behalf, appellee instituted this suit for $156, face of the policy, with statutory 12% penalty and $150 attorney's fee. The only issue involved on this appeal, raised only by appellant's answer, is that deceased was not an insurable risk at the time of the issuance of the policy, but was suffering from tuberculosis, from which he subsequently died; thus, under express terms of the policy, the insurance never took effect and the only liability assumed by the insurer was a return of premiums paid thereon.

The plaintiff (appellee) alleged in his petition that the policy was in full force and effect on July 25, 1942 (date of insured's death); that thereafter, the beneficiary submitted full and complete proof of death on blanks furnished by defendant company, in all other respects complied with the conditions of the policy for payment of benefits expressed therein, and made due and timely demand for such payment, which was refused. The defendant (appellant), answering, denied plaintiff's

general allegations of liability and effectiveness of the policy, and specially alleged that at the time of issuance and delivery of the policy, the insured was not in good health but was suffering from tuberculosis in an advanced stage, which continued and ultimately caused his death; that under the provisions of the policy: "3. Effective. This policy shall not take effect, if the insured die before the date hereof; or if on such date the insured be not in sound health; but in either event, the premiums paid hereon, if any, shall be returned"— the defendant's liability is expressly limited to return of the premiums paid, which amount the company tenders in full satisfaction of such liability; and further, defendant specially alleged that on or about September 11, 1942, proof of death was executed and presented to defendant by the beneficiary, supported by her oath and a physician's certificate showing that the insured had been afflicted with pulmonary tuberculosis for more than two years prior to the issuance and delivery of the policy; and relying upon such proof, the defendant denied liability. These special defenses were not controverted by plaintiff and no attempt was made to rebut, explain, correct, or repudiate them. The recital in the proof of death that deceased was afflicted with pulmonary tuberculosis before the issuance of the policy, stood unchallenged by any plea of plaintiff's.

On trial to a jury, the verdict was, (1) that the insured was in sound health; that is, as defined by the trial judge, "being without any important or serious disease and free from any ailment that seriously affects the general soundness of the physical system"; and (2) as to fee for services of plaintiff's attorney in the prosecution of the suit, the jury found "None." Responding to the verdict, the court entered judgment in favor of plaintiff on behalf of his wife for $156, with 6% interest from April 19, 1943 (date of ·judgment) until paid, $18.72, representing 12% damages, and all costs of suit; allowing no attorney's fee. Defendant alone filed motion for new trial, assigning error on the verdict of the jury, and the action of the trial court in overruling its motion for judgment on the state of the pleadings and evidence, which motion was overruled.

On trial, plaintiff offered in evidence the policy of insurance with the correlative provision that same did not take effect if the insured was not in sound health at the date thereof, and offered the proof of death submitted by claimant to show compliance with the terms of the policy. In rebuttal, defendant also offered the policy showing the limitation of its liability, and the proof of death as admission against interest of claimant. The proof of death (relevant here) shows, in response to questions: "(11) What was the cause of death? Doctor says tuberculosis. (12) When was health of deceased first affected? About June 1, 1941. (13) How long was deceased confined to house by last illness? About fourteen months. (14) State name and address of each physician who has attended deceased during the last two years? Roy Goggans, Dallas, Texas. Date 25 Aug. 1942. Signature of claimant. Ida Bell Cox." The proof of death further shows that it was sworn to by the claimant before John Jasper, Notary Public, Dallas County, and on the reverse side thereof, the attending physician's certificate, which is as follows: "(8) Date of death. 7–25–1942. (9) Date of your first visit or prescription in last illness. 5–22–1941. (10) Date of your last visit. 7–25–1942. * * * (13) State the disease causing death (avoid indefinite terms). (1) Primary Pulmonary Tuberculosis. (14) State the duration of illness. (a) From personal knowledge 14 months; (b) From history of the case, 3½ years. (15) Did deceased have consumption? Yes. Signature Roy Goggans, M. D."

■ Substantiating the facts related in the proof of death, Ida Bell Coxson, beneficiary, testified that in May, 1941, two months after the insurance policy was issued, the deceased was taken to Parkland Hospital, a county and city institution, for treatment of tuberculosis; that he was admitted on application as an emergency patient and transferred, within about two weeks, to Woodlawn Hospital, another tubercular institution, where he died in July, 1942. The beneficiary further testified that after the death of the insured, she took the blank proof of death and doctor's certificate to Dr. Goggans, who typed in the answers, and knew he recited therein that her brother had had consumption and pulmonary tuberculosis since 1939, or three and a half years prior to his death; that she dictated the answers to the doctor at Woodlawn Hospital, and that the information therein is correctly writ-

ten. Dr. Roy Goggans testified that he is resident physician at Woodlawn Hospital, specializing in the treatment of tuberculosis; that he examined Rustine Fredrick at the time he was admitted to the institution and treated him while there; that he was admitted on May 22, 1941, suffering from pulmonary tuberculosis of both lungs in a very advanced stage, and died in the Hospital of tuberculosis some fourteen months later. From the history given by the patient, X-Ray examinations, and treatment, Dr. Goggans further testified that the patient had been afflicted with the disease for two and a half years prior to his admission to the institution, that he was in a serious stage when admitted, and the patient's signed application for admission verified his condition, relating that he had been "sick for past 2½ yrs." Such proof of death, substantiated by the uncontroverted testimony, relieves the insurer of liability under the express terms of the policy. Such disclosures make a complete defense in absence of some explanation, pleading, or proof that the insured's death was other than stated by claimant in the preliminary proofs furnished the insurer, or that he was free from such disease when the policy was executed.

It will be seen that plaintiff neither alleged nor proved that the claimant's statements made to the doctor and incorporated in the proof of death, under oath, were untrue, but, on the contrary, the claimant testified that she dictated the facts of his death and the duration of his illness, which, we think, conclusively preclude any controversial issue as to the condition of insured's health at the time of delivery of the policy. There can be no doubt that consumption, or pulmonary tuberculosis, is an insidious disease, lying dormant at times, and susceptible to cure only when treated in its early stages, but where the disease has advanced to the stage of affecting both lungs of a human being, and an emergency exists, as here, for immediate medical attendance, and the party subsequently dies of the disease, it can hardly be said that such a party would be in sound health, that is, "being without any important or serious disease and free from any ailment that seriously affects the general soundness of the physical system," as found by the jury.

In Supreme Forest Woodmen Circle v. Garcia, Tex.Civ.App., 103 S.W. 2d 1108, 1110, on similar facts, the San Antonio Court of Civil Appeals, supported by numerous authorities, announced the rule thusly:

"Proofs of death, when furnished the insurer by the claimant as required in the contract of insurance, and which contain statements which, if true, have the effect of relieving the insurer of liability, are not necessarily conclusive against the claimant as to such statements, or as to the cause of death, as in this case. Such statements make a prima facie case against the claimant, but he may explain, repudiate, or correct the same, and show the true cause of death was other than that stated by him in the preliminary proofs furnished the insurer.

"But in order to avail himself of the right to rebut the facts stated in his previous admission (which if permitted to stand would destroy his case), he must first expressly explain, correct, or repudiate such statement, and until he does so he is not entitled to recover. Such appears to be the rule in this as well as many other jurisdictions." (Citing authorities)

Plaintiff sought to raise the issue that the insured was in sound health by proof that prior to and at effective date of the policy, the insured had the appearance of being in good health, worked regularly, ate heartily, and made no complaint of being ill. The claimant, Ida Bell Coxson, sister of the deceased, testified, in effect, that at the time the policy was issued, her brother was staying at her home and she saw him daily, that he had a jovial disposition, didn't seem like he was sick, always cheerful and never said he felt bad; that he worked regularly, ate heartily, apparently slept well, and, so far as she knew, was enjoying good health. Lovie Coulter, a neighbor of deceased, testified that she knew Fredrick two years prior to his death; that during that time, she never heard him complain about his health; he appeared to be healthy, no change in his weight, but that he didn't have as good an appetite as others. The plaintiff, brother-in-law of deceased, testified that Fredrick and he worked together two years before his death; that he saw him daily; that the insured became sick about two weeks before he was sent to the hospital, and was sick only one day before that time; that he was a hard worker, pretty cheerful,

never talked or laughed very much, made no complaint about the way he felt, and that so far as he could tell, Rustine Fredrick appeared to be in good health.

We think this testimony falls far short of disproving that the insured had tuberculosis, or rebutting the declaration deceased made when admitted to the hospital, and the disclosures in claimant's proof of death, that he (deceased) was afflicted with the disease for more than three years before his death. It might well be conceded that he had all appearances of being a well man, yet was suffering from the dread "white plague"—consumption. The deceased knew his condition, diagnosed his own troubles, as was proven conclusively by a medical expert. It is evident that no probative proof was offered to sustain the findings of the jury, hence the trial court erred in overruling appellant's motion for instructed verdict and entering judgment for appellee. The case having been fully developed, the judgment of the court below is reversed, and here rendered that appellee take nothing, and that appellant be discharged on payment into court of its tender—$7.40.

Reversed and rendered.