## SOUTHERN STATES LIFE INS. CO. v. WATKINS.

No. 13479.

Court of Civil Appeals of Texas. Dallas.

May 26, 1944.

Storey, Sanders, Sherrill & Armstrong and Samuel H. Boren, all of Dallas, for appellant.

Wade, Ford & Duke, of Dallas, for appellee.

BOND, Chief Justice.

This is a suit on a life insurance policy on the life of Dora T. Watkins, mother of appellee. The policy was issued on June 1, 1942, and the insured died on June 29, 1942, at St. Lawrence Hospital, Lansing, Michigan, from pyelonephritis—renal failure, superinduced by arterio sclerosis, and chronic myocarditis—commonly called kidney disease. The Insurance Company denied liability on the ground that, on the date of the policy and its delivery to the insured, she was not in sound health, a condition for liability under the terms of contract other than the return of all paid premiums.

The cause was tried to a jury and verdict rendered that, at the date of the policy, the insured was in sound health; accordingly, judgment was entered in favor of appellee for the amount of the policy, with 6% interest, 12% penalty, and $100 attorney's fee, aggregating $390. In due order, appellant raises the questions that the verdict is not supported by evidence, contrary to the overwhelming preponderance of evidence and should not be permitted to stand as a basis for recovery, and that the trial court erred in overruling its motion for judgment non obstante veredicto. We are in accord with appellant's contention, and, but for the holding of the Supreme Court in the case of Ira Coxson v. Atlanta Life Ins. Co., Tex.Sup., 179 S.W.2d 943 [not yet reported in State Report], reversing our decision (Atlanta Life Ins. Co. v. Ira

Coxson, 177 S.W.2d 114), we would have no hesitancy in reversing this judgment.

The evidence in this case shows that two or three days after the policy was issued, the insured went to Williamson, Michigan, and about two weeks thereafter was taken to a hospital and examined by two physicians of her own choice. Her illness was diagnosed as kidney disease—pyelonephritis, renal failure, superinduced by arterio sclerosis, and chronic myocarditis—from which she died twenty-eight days after the date of the policy. At the time of her death, she was sixty-six years of age and, according to the doctor's report, had been afflicted with the disease for "several years." The policy was made payable to appellee, her son, and, according to its terms, he furnished to the Insurance Company the doctor's certificate of death as a basis for payment of the amount of the policy. The certificate recited the cause of her death as above detailed, and on the showing made, the Company denied liability and tendered to appellee all premiums paid on the policy.

The written depositions of the two physicians who diagnosed the insured's troubles were offered in evidence by appellant and, in response to direct interrogatories, material here, Dr. Breakey testified:

"Interrogatory No. 16. From your examination and your treatment of Mrs. Dora Watkins and from your experience and training as a physician, do you have an opinion based upon reasonable medical certainty as to the approximate length of time that Mrs. Dora Watkins suffered from arterio sclerosis, chronic myocarditis, pyelonephritis and renal failure? Answer: As regards the arterio sclerosis and chronic myocarditis, as with any elderly individual, these had been gradually progressive over a period of several years. As regards the pyelonephritis, the picture at the time I saw the patient was that of an acute and overwhelming infection, the exact duration of which I am uncertain. The patient reported, however, that she had experienced several febrile attacks about 7 or 8 months previously without associated chills. This may well have been due to some infection of the kidney at that time. It is impossible to state this definitely as a fact. The present acute episode began five days prior to the time we saw her. * * *

"Interrogatory No. 18. From your experience as a physician and from your examination and treatment of Mrs. Dora Watkins, do you have an opinion based upon reasonable medical certainty as to whether or not Mrs. Dora Watkins could have contracted arterio sclerosis, chronic myocarditis, pyelonephritis and renal failure after June 1, 1942? Answer: The patient cannot be regarded as contracting arterio sclerosis and chronic myocarditis. These are degenerative processes which develop slowly and progressively over a period of time and undoubtedly existed prior to June 1, 1942. As stated in the answer to question No. 16, the pyelonephritis may well have existed prior to the time we saw the patient, but from the history of the present episode; namely, the fatal illness, it had its onset five days earlier. I should hesitate to be dogmatic as to its duration. The situation was alarming from June 18 until the time of death, and the outlook was unfavorable at the time I first saw her until she expired. * * *

"Interrogatory No. 20. From your examination of Mrs. Dora Watkins during her last illness, and from your treatment of her, do you have an opinion based upon reasonable medical certainty as to whether or not she was suffering from arterio sclerosis, chronic myocarditis, pyelonephritis and renal failure on June 1, 1942? Answer: Yes.

"Interrogatory No. 21. What is that opinion? Answer: Certainly there existed an arterio sclerosis and chronic myocarditis prior to June 1, 1942. As to the pyelonephritis, it is possible, and even probable that this may have existed prior to June 1, 1942, though a definite reply to this question cannot be given. As to the renal failure, this I believe was an acute development, beginning as far as we are able to ascertain, 5 days prior to June 18, 1942."

Dr. Black testified:

"Interrogatory No. 6. State whether or not in your capacity as a physician you examined Mrs. Watkins during the period from June 18, 1942 to June 29, 1942. Answer: Yes.

"Interrogatory No. 7. Please describe the method of examination and technique that you used in examining her. Answer: History, physical and laboratory examinations. Dr. R. Breakey, Lansing, Mich. performed a cystoscopic examination.

"Interrogatory No. 8. State what your examination disclosed. Answer fully.

Answer: My examination disclosed a probable pyelonephritis and renal failure and secondary anemia.

"Interrogatory No. 9. Did you keep a history of her case? Answer: Yes.

"Interrogatory No. 10. From the examination of Mrs. Watkins above described did you form an opinion, based upon reasonable medical certainty, as to what the diagnosis in this case was? Answer: Yes.

"Interrogatory No. 11. Please state briefly what your complete diagnosis was based upon your examination. Answer: Pyelonephritis and renal failure and severe secondary anemia.

"Interrogatory No. 12. From your examination and treatment of Mrs. Dora Watkins, do you have an opinion based upon reasonable medical certainty as to what the immediate cause of her death was? Answer: Yes.

"Interrogatory No. 13. What is that opinion? Answer: Renal failure.

"Interrogatory No. 14. What is pyelonephritis and renal failure? Answer: Pyelonephritis is inflammation and degeneration of the secretory structures and failure of the kidneys.

"Interrogatory No. 15. State whether or not arterio sclerosis and chronic myocarditis were, in your opinion, if any, contributing causes of the death of Mrs. Dora Watkins? Answer: Yes, in my opinion, I believe they were.

"Interrogatory No. 16. From your examination and your treatment of Mrs. Dora Watkins and from your experience and training as a physician, do you have an opinion based upon reasonable medical certainty as to the approximate length of time that Mrs. Dora Watkins suffered from arterio sclerosis, chronic myocarditis, pyelonephritis and renal failure? Answer: Yes.

"Interrogatory No. 17. What is that opinion? Answer: Several years."

We think this testimony is uncontroverted. The only effort made by appellee to establish an issue was the testimony of interested witnesses, relatives of appellee, and two others living in appellee's home. Their testimony is, in effect, that the insured looked all right, she ate and slept as usual, she worked and made no complaint of illness in their presence; hence, as far as they knew, she was of sound health at the date of the policy of insurance. Evidently, none of them were versed in medical science or made diagnosis of the insured's condition. They did not know, and perhaps could not tell, that the insured was suffering from arterio sclerosis, or chronic myocarditis. The disease from which the insured died is well known to the medical profession—an insidious lingering illness usually fatal after years of suffering. There is nothing in the record reflecting adversely on the two physicians, or any evidence controverting their testimony. Their depositions were not even crossed by appellee, and he offered no testimony of probative value to the contrary.

A jury verdict is always jealously guarded and maintained by our courts, but such affords no ground for a court to crown its sacred place by underwriting a conclusion wrongfully reached. The jurisdiction to review the facts of a case on appeal rests exclusively with Courts of Civil Appeals and, being cognizant of such power and authority, we reach the conclusion in this court that the verdict of the jury should be set aside. But, as the Supreme Court, in the Coxson case, supra, on facts similar, and perhaps stronger against liability than in the present case, assumed jurisdiction on the facts and reversed our decision (177 S.W.2d 114), we may well conclude it will do the same in this case. Therefore, in deference to the Supreme Court's opinion in the Coxson case, and disregarding its oft-said admonition, that "The character of judgment to be entered cannot be determined until such fact questions are decided, and the Court of Civil Appeals is the proper court to decide them" (Norton v. Cheney, 138 Tex. 622, 161 S.W. 2d 73, 74), the judgment of the court below is affirmed.

Affirmed.