## IRA COXSON V. ATLANTA LIFE INSURANCE COMPANY

No. A-74. Decided April 19, 1944.
Rehearing overruled May 17, 1944.
(179 S. W., 2d Series, 943.)

*John E. V. Jasper* and *F. B. Davenport*, both of Dallas, for petitioner.

The error of the Court of Civil Appeals was in setting aside the jury's finding that insured was in sound health when the life insurance policy in question was issued, thereby depriving the petitioner of a trial by jury on a disputed ultimate issue of fact. Atlanta Life Ins. Co. v. Cormier, 126 Texas 179, 85 S. W. (2d) 1045; First Texas State Ins. Co. v. Smalley, 111 Texas 68, 228 S. W. 550.

*Irwin & Irwin* and *Ivan Irwin,* all of Dallas, for respondent.

The jury has no right to arbitrarily reject the evidence of an unimpeached witness against whom there were no discrediting facts or circumstances, even though they are the judges of the weight of the evidence. Grand Fraternity v. Melton, 117 S. W. 788; U. S. Health & Acc. Co. v. Jolly, (Ky.) 101 S. W. 1179; Bank Saving Life Ins. Co. v. Milam, 70 S. W. (2d) 294.

MR. JUDGE FOLLEY of the Commission of Appeals delivered the opinion for the Court.

This is a suit by the petitioner, Ira Coxson, in behalf of his wife, Ida Bell Coxson, against the respondent, Atlanta Life Insurance Company, upon a life insurance policy issued by respondent upon the life of Rustine Frederick, deceased, in which petitioner's wife, a sister of deceased, was named beneficiary. Petitioner sued for $156.00, the face value of the policy, and for the statutory 12% penalty and attorney's fees in the sum of $150.00. The policy provided that the same should not be effective if the insured was not in sound health at the time it was issued. The defense of the respondent was that the deceased was not in sound health at that time. In the trial court the jury resolved this issue against respondent and that court rendered judgment for petitioner for the face amount of the policy plus the 12% penalty. The Court of Civil Appeals reveresed the judgment of the trial court and rendered judgment for respondent. 177 S. W. 2d 114.

The Court of Civil Appeals held that the trial court erred in not instructing a verdict for respondent and in entering judgment for petitioner. Such holding was upon the ground that the evidence as a whole, and particularly certain statements in the proof of death submitted to respondent by the claimant, showed conclusively that the insured had tuberculosis and was not in sound health when the policy was issued.

This Court granted petitioner's application for writ of error upon the assignment that the Court of Civil Appeals erred in holding that the evidence raised no jury question as to the sound health of the insured. As a basis for jurisdiction of the Supreme Court petitioner asserts that the holding of the Court of Civil Appeals is in conflict with the holding of this Court in Vann v. National Life & Accident Ins. Co., 24 S. W. 2d. 347 and a former holding of the some Court of Civil Appeals in Taylor v. Atlanta Life Ins. Co., 130 S. W. (2d) 889. We think the petitioner is correct as to the conflicts in both instances.

The policy was issued on March 3, 1941, and the deceased died of pulmonary tuberculosis on July 25, 1942. During the first part of May 1941, about two months after the issuance of the policy, the deceased, who then lived in Dallas, was taken to Parkland Hospital in that city as an emergency patient. He remained there about two weeks when, on May 22, 1941, he was transferred to Woodlawn Hospital, a tubercular institution in the same city, where he remained as a patient until his death

fourteen months later. The application for admission to Woodlawn Tubercular Hospital, signed by the deceased, stated that deceased was a 28-year old negro, that he owned no property, was unable to pay for hospital care, and had been "Sick for past 2½ years."

The proof of death, which the Court of Civil Appeals held precluded a recovery, was upon the form of the insurance company and consisted of a sworn statement by the beneficiary and an unsworn statement from the attending physician, Dr. Roy Goggans, of Dallas. The statement of claimant was dated August 25, 1942, and that of the physician September 11, 1942. From the sworn statement of the claimant the following questions and answers are deemed material: "11. What was the cause of death? Doctor says tuberculosis. 12 When was health of deceased first affected? About June 1, 1941. 13. How long was deceased confined to house by last illness? About fourteen months. 14. State name and address of each physician who has attended deceased during the last two years. Roy Goggans, Dallas, Texas."

On the reverse side of the above certificate was the statement of the attending physician. At the conclusion of this statement there appeared the usual affidavit form for a notary public, which was left blank and unexecuted, and the appendage appeared thereunder that "This affidavit must be executed by the attending physician." The portions of the unsworn statement of the physician which we deem material are as follows: "3. Apparent age at death. 29 years. 8. Date of death. 7-25-1942. 9. Date of your first visit or prescription in last illness. 5-22-1941. 10. Date of your last visit. 7-25-1942. 11. Had you previously attended deceased? No. 13. State the disease causing death (Avoid indefinite terms). Pulmonary tuberculosis. 14. State the duration of illness. (a) From personal knowledge 14 months. (b) From history of the case 3½ years. 15. Did deceased have consumption? Yes. Roy Goggans, M. D."

Dr. Goggans testified orally that he examined deceased at the time he was admitted to the Woodlawn Hospital on May 22, 1941, and that he was then suffering from pulmonary tuberculosis of both lungs in an advanced stage. This date was more than two months subsequent to the date of the policy. He further testified that from the history given by the patient, and from his examinations, his opinion was that the deceased had been affected with tuberculosis two and one-half years at the time of his admission to Woodlawn Hospital.

Petitioner introduced evidence to the effect that at the time the policy was issued, and prior and subsequent thereto, the insured had had the appearance of good health, worked regularly, ate heartily, and made no complaints of being ill. Lovie Coulter, a friend of deceased, testified that he roomed at her house the last half of 1940; that he then worked with petitioner, Ira Coxson, on a truck, hauling dirt and gravel and working on yards; that he was home every night; that she saw him go about his work daily; that he was cheerful, never complained of his health and appeared to be healthy; and that there was no change in his weight but that he "didn't have as good an appetite as others, but other than that, his health seemed like it was good to me." Ida Bell Coxson, the claimant and sister of deceased, testified that at the time the policy was issued the deceased was staying at her home and working on the truck with her husband; that she saw him daily and that he was digging dirt and hauling gravel; that he was not sick, was cheerful, and missed no time from his work; that he ate normally and slept well; that he had not been to a doctor at that time; that he was sick only about two weeks before he was taken to the hospital; and that he then took sick suddenly, which was the first time he had been sick or complaining. The petitioner testified that he and the deceased worked together daily for several months in the latter part of 1940 and up until the time the deceased was admitted to the hospital in May 1941; that they set out grass lawns, hauled gravel and loaded it on the truck; that prior to the time he went to the hospital deceased missed work only one day on account of his health, and that was in May 1941 when he had a cold; that deceased did hard labor shoveling gravel and cutting concrete; that he was cheerful, made no complaints, and appeared to be in good health; and that he had been sick about two weeks before he went to the hospital.

■ It is our opinion that the above testimony presented a controverted issue of fact to be determined by the jury as to the sound health of the deceased at the time the policy was issued, which was two months and nineteen days before the deceased was admitted to Woodlawn Hospital and examined for the first time by Dr. Goggans. The opinion of the Court of Civil Appeals to the contrary is clearly in conflict with the holding in Vann v. National Life & Accident Ins. Co., supra, which dealt with a very similar state of facts.

■■ The opinion testimony of experts, although persusive, under most circumstance is not conclusive. It is peculicarly within the province of the jury to weigh opinion evidence, taking into consideration the intelligence, learning, and experience of the

witness and the degree of attention which he gave the matter. The judgments and inferences of experts or skilled witnesses, even when uncontroverted, are not necessarily conclusive on the jury or the trier of facts, unless the subject is one for experts or skilled witnesses alone where the jury or the court cannot properly be assumed to have, or be able to form, correct opinions of their own based upon the evidence as a whole and aided by their own experience and knowledge of the subject of inquiry. 22 C. J. 728, Sec. 823; Simonds v. St. Louis, B. & M. Ry. Co., 127 Texas 23, 91 S. W. 2d. 332; Houston Belt & Terminal Ry. Co. v. Vogel, 179 S. W. 268; Guinn v. Coates, 67 S. W. 2d. 621.

■ It is also established that non-expert witnesses who have observed the appearances and actions of another may testify that such person was in good health so far as the witness knew, and that such person appeared to be in good health, and continued his usual work in the customary manner. Natl. Life & Accident Ins. Co. v. Muckelroy, 40 S. W. 2d. 1115; Texas· Life Ins. Co. v. Hatch, 167 S. W. 2d. 802; Genl. Life Ins. Co. v. Potter, 124 S. W. 2d 409, and authorities there cited. The testimony of the lay witnesses in this case was therefore obviously sufficient to controvert that of the physician, particularly since the physician was offering an opinion as to the condition of the insured's health at a time more than two months before he first examined him.

■ We also think petitioner was not precluded from recovery by reason of the statements in the proof of death nor by deceased's statement as to his condition contained in his application for admission to the charitable institution for tubercular patients. Such ex parte statements are subject to impeachment. Proofs of death containing statements which, if true, would relieve the insurer of liability, are not necessarily conclusive against the claimant since such statements make only a prima facie case against the claimant which may be explained, repudiated or corrected by showing the true facts contrary to the preliminary proofs furnished the insurer. Southland Life Ins. Co. v. Brown, 121 S. W. 2d. 653. This rule was recognized in Supreme Forest Woodmen Circle v. Garcia, 103 S. W. 2d. 1108, writ refused, which case was relied upon by the Court of Civil Appeals in its holding in the instant case. The statements contained in deceased's application for admission to the hospital are certainly no less subject to challenge than those contained in the proofs of death.

We are further of the opinion that the evidence of the lay witnesses was sufficient to rebut any conclusive effect that might be contained in the ex parte statements in question, and the holdings of the Court of Civil Appeals to the contrary is, in our judgment, in conflict with its former holding on the same subject in Taylor v. Atlanta Life Ins. Co., 130 S. W. 2d. 889.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court April 19, 1944.

Rehearing overruled May 17, 1944.