**PREFERRED LIFE INSURANCE COMPANY, Appellant,**

v.

**R. L. DARK et ux., Appellees.**

No. 7008.

Court of Civil Appeals of Texas.

Texarkana.

Nov. 19, 1957.

Rehearing Denied Dec. 3, 1957.

Second Motion for Rehearing Denied Dec. 31, 1957.

Cervin & Melton, Claude R. Wilson, Jr., Dallas, for appellant.

Fields & Fields, Athens, for appellees.

CHADICK, Chief Justice.

On motion for rehearing, the opinion delivered in this case on October 31, 1957, is withdrawn and the following opinion is substituted therefor. This is a suit by an assured to recover hospital and medical benefits of $942.25 under a hospital and

surgical expense policy of insurance issued by appellant. On a jury verdict the trial court entered judgment favorable to the assured and such judgment is affirmed.

The Insurance Company presents one point of error in its appeal complaining thereby of the alleged error of the trial court in overruling defendant's motion for instructed verdict. That motion was as follows:

"Now comes Defendant, Preferred Life Insurance Company, and after both Plaintiff and Defendant have closed and moves the Court to instruct the jury to return a verdict for the Defendant and against the Plaintiff for the reason that pre-existing illness has been established by the uncontroverted testimony of Dr. Coats, that Plaintiff Kate Dark was suffering from arthritis on July 27, 1954, which was prior to the application for this policy made on October 18, 1955, the uncontradicted evidence in this case having shown that the illness for which Plaintiff seeks recovery is arthritis."

The insurance policy afforded no coverage for expense incurred as a result of an illness existing at the date of its issue. Reference to the appellant's motion for instructed verdict shows that it was based on the proposition that the appellee Kate Dark was suffering from arthritis prior to the *application* for the policy made on October 18, 1955, and not on the proposition that arthritis existed on the effective date of the policy. Actually the application was made October 4, and the effective date of the policy was October 18, 1955. Rather than quibble as to the proper construction to be placed upon the motion, it is thought that this case can be disposed of upon the narrow ground tendered by the appellant in its brief which is stated thus: " * * * We are * * * faced with the question of whether or not the medical testimony of a doctor standing alone is sufficient to jus-

tify the court in rendering an instructed verdict." The testimony of the doctor referred to relevant to this question is set out in full as follows:

"Q. Doctor, I will ask you if you ever treated Mrs. Dark for arthritis? A. It would be July 27th, 1954, is the first record I have of prescribing anything for arthritis.

"Q. There was no question in your mind but that Mrs. Dark had arthritis, was there? A. Well, that was the diagnosis, and that was what I was treating her for.

"Q. You recognize a person with arthritis when you see them and examine them, is that correct? A. Yes, sir.

Q. You diagnosed her condition as what? A. Spondylitis.

"Q. Spondylitis? A. Or arthritis along the spine, if you want it that way. A. The date given there, July of '50-something, whenever it was, the date that I gave a while ago. It would be july 27th, 1954, the first record I have.

"Q. What kind of treatment did you give her then? A. A treatment for arthritis.

"Q. What did you do for her? A. I gave her a dose of salihexin, which is salicylate of soda, and a dose of hexamethylanamin, and gave her a prescription for Butazolidin tablets.

"Q. What is that supposed to do? A. It is a medicine for arthritis.

"Q. What does it do? A. It allays inflammation and relieves pain and relaxes muscular spasms.

"Q. Did you ever cure her arthritis? A. Not that I know of.

"Q. Well, did you do her any good? A. I don't know.

"Q. You said you treated her there. A. Yes, sir. I saw her one time in

July of 1927—I mean July 27th, 1954, and I did not see her again professionally until October 26th, 1955. Then I saw her on October 28th, 1955; that was over a year and three months later. *I don't know what the results were from the July '54 treatment.*

"Q. You don't know what Mrs. Dark's condition was, then, after March 3rd, 1956. A. No, sir, I do not.

"Q. You don't know whether she was well or worse or what, do you? A. No. sir, I don't know a thing about it. I had hoped, of course, she would be all right." (Emphasis added.)

■ It is appellant's contention that the testimony of the doctor is conclusive on the fact issue that Mrs. Kate Dark was suffering from arthritis on October 4, 1955, the date of her application, and on October 18, 1955, the effective date of the insurance policy. And that the rule expressed in Travelers Ins. Co. v. Blazier, Tex.Civ.App., 228 S.W.2d 217, err. dis., that there are some subjects about which it is only the opinion of experts that has any value as evidence and about which it cannot properly be assumed that laymen can form correct opinions either from their own knowledge and experience or from opinions expressed by lay witnesses should be applied to and control the disposition of this case.

That rule is an exceptional one, narrow in its application, and not applied unless the facts bring a case strictly within its scope. A brief analysis of the facts will demonstrate that this is not a case requiring the application of the Blazier rule.

■ Mrs. Kate Dark did not testify, but her application for insurance was introduced into evidence by the appellant without limitation and in it she answered "No" to a question inquiring if she had arthritis. The evidence is that her claim is for hospitalization expense incurred by her for treatment for osteoarthritis. Ref-

erence to the doctor's testimony heretofore set out reveals that the doctor did not testify either to the objective or subjective symptoms of his patient nor the tests and procedures used by him in arriving at a diagnosis of spondylitis or otherwise explain how he reached his conclusion that Mrs. Dark suffered from a form of arthritis on July 27, 1954, but merely stated that arthritis was the diagnosis and the disease for which he treated her. He testified that he did not know what the result of the July, 1954 treatment was. He began his treatment July 27, 1954, saw her next over a year later, on October 25, 1955 (seven days following the effective date of the policy) and again two days later, then December 27, 1955, and one time thereafter, on March 3, 1956. There is no evidence in this record that arthritis is incurable nor that the treatment the doctor prescribed for Mrs. Dark in 1954 did not have the desired effect of accomplishing a cure, except that a jury might reason that it did not if she had the disease seven days after the policy was issued. In this state of the record it cannot be said that the doctor's testimony is conclusive that Mrs. Kate Dark was a victim of arthritis on the effective date of the insurance policy, or that arthritis pre-existed in her body at the effective date of the policy and that no fact issue was presented by the testimony for solution by a jury. Nor on this record can it be said that arthritis and its diagnosis is a matter exclusively within the scientific fields wherein the average juror or layman does not possess knowledge or information from which to draw his own conclusions.

Believing that the medical testimony in the record will not support an instructed verdict, and that this case is controlled by the authority of Coxson v. Atlanta Life Ins. Co., Tex.Com.App., 142 Tex. 544, 179 S.W.2d 943; and Simmonds v. St. Louis B. & M. R. Co., Tex.Com.App., 127 Tex. 23, 91 S.W.2d 332, appellant's point is overruled, and the judgment of the trial court is affirmed.