**NATIONAL OLD LINE INSURANCE
COMPANY, Appellant,**

v.

**Joe L. GARCIA, Jr., Appellee.**

**No. 17546.**

Court of Civil Appeals of Texas,
Fort Worth.

Dec. 13, 1974.

Rehearing Denied Jan. 17, 1975.

McGown, Godfrey, Decker, McMackin, Shipman & McClane, and Richard L. Bourland, Fort Worth, for appellant.

Law Offices of Yarborough & Pope, Inc., and Frank H. Pope, Jr., Bedford, for appellee.

## OPINION

### ON MOTION FOR REHEARING

MASSEY, Chief Justice.

Our opinion of October 25, 1974 is withdrawn, with the following substituted therefor.

Joe L. Garcia, Jr., plaintiff, brought suit upon an injury or sickness policy of insurance against defendant National Old Line Insurance Company.

Trial was to a jury, and upon a favorable verdict, judgment was rendered in favor of plaintiff against the defendant company. The company appealed.

We reverse and render.

The policy of insurance in question was delivered September 1, 1972, effective that date. A condition to the initial effectiveness of the policy appeared in the application upon which it was delivered, wherein, over signature of plaintiff, it was provided: "I agree that, except where conditional receipt is issued, the policy hereunder applied for shall not take effect unless I am alive and in good health and I have no knowledge that the answers to the questions pertaining to my health are not the same as above stated at the time the policy is delivered to me."

The question upon which disposition of the case is made to depend, under Texas law, was: "Was plaintiff in good health on September 1, 1972 when the policy was delivered?" If, in view of the evidence standing undisputed in the record, it might properly be said that he was not in good health on September 1 the insurance policy never became effective and plaintiff would not be entitled to recover under it. If there was dispute in the evidence the insurance company could only hope to prevail on appeal by winning a new trial upon a decision of the appellate court that the finding that plaintiff was in good health at the material time was against the great weight and preponderance of the whole of the evidence.

The following special issue was submitted to the jury:

"Do you find from a preponderance of the evidence that Mr. Garcia was not in good health as that term is defined below at the time the policy in question was delivered to him?

"In connection with the above Special Issue you are instructed that good health does not mean perfect health, but means state of health free from any disease or bodily infirmity of substantial nature which affects general soundness and healthfulness of system seriously or materially increases risk to be assumed by the insurance company. (You will) Answer: 'He was not in good health' or 'He was in good health'." To the issue the answer returned was: "He was in good health".

The definition followed the guidelines in Great American Reserve Insurance Co. v. Britton, 406 S.W.2d 901, 905 (Tex.Sup., 1966), and the other authorities upon which the court relied in making its statement thereon. The conclusiveness of the proof made in behalf of the company on the instant appeal that plaintiff was not in

good health at time the policy was delivered must be tested by these standards.

Apart from the condition of the eyes of the plaintiff other aspects of his condition of health at any time are immaterial. It is only the attempt by the company to discharge the affirmative burden of proof cast upon it by demonstration that by reason of the condition of plaintiff's eyes on September 1, 1972 he was not "in good health" as a matter of law that would entitle it, if successful, to obtain the judgment of this appellate court.

Certainly the evidence in the record is such that the jury was entitled to believe that plaintiff, who could not read or write and who could only occasionally understand a statement or question in the English language, had no intent to defraud the company, and did not by his answers defraud the company. And the evidence was such that there would be support for the jury findings that even up to September 1, 1972, plaintiff had not been treated for a disease of his eyes and had not had an indication of a disease of his eyes. Many persons do not consider an eye examination to amount to treatment, nor the findings upon such examination of degree of loss of vision to be an indication of a diseased condition.

However, the evidence is undisputed that from sometime in June, 1972, plaintiff was having trouble with his eyesight, and that even before he signed the application for the policy of insurance his eyes had been tested and it had been determined that he had only 20/200 vision. The occasion was when, about May of 1972, he was unable to pass the test for renewal of his driver's license and he was referred to a local hospital for examination.

Less than two weeks after executing the application for the policy of insurance (on June 27, 1972) plaintiff was referred by the State Commission for the Blind to a Dr. Thomas Smith. He appeared before Dr. Smith, as Dr. Smith's patient, on July 8, 1972. Dr. Smith was not called to testify on trial by plaintiff, but was called by the insurance company. He testified that he determined from his examination of plaintiff's eyes that plaintiff was suffering from macular degeneration, an eye disease, and that plaintiff's best corrected vision was 20/200, which, in the opinion of Dr. Smith, constituted legal blindness and total permanent disability due to such condition of the eyes.

However, there was evidence in the record to the effect that even at time of plaintiff's visit to Dr. Smith he was regularly employed as a cabinet painter; and that he continued to work at such character of employment until January 17, 1973. On said date in January, 1973, plaintiff returned to Dr. Smith and was examined by him, at which time it was found that he had even less vision that he had in July of 1972. On such 1973 date he had vision only of 20/400. There is no dispute between the parties to the litigation but that plaintiff had at this stage lost the usefulness of his eyes and that because thereof he was totally disabled within the contemplation of the insurance policy, upon which the benefits declared upon by plaintiff would become due were there not a coverage question.

Concerning the 1973 visit for eye examination Dr. Smith testified that he was surprised to have found further loss of vision since July in 1972, for he had been of the opinion that the July, 1972, eye condition would remain static and would not further deteriorate.

Relative to the opinion on plaintiff's disability as of July, 1972, termed by Dr. Smith as "legally blind", the doctor was taken on cross-examination by plaintiff's counsel and testified that such was his opinion even though plaintiff was at that time working. His evidence was that it was well for plaintiff to continue to work if he could, even though he had the eye condition; that even if a person is "legally blind" that any employment in which such a person might find himself able to engage

should be encouraged. Further, his testimony was that when a person with the type and degree of blindness found as to plaintiff in July, 1972, would continue to go about the tasks of his usual employment it would be expected that such activity could continue for years. A conclusion which could be drawn from the doctor's testimony would be that plaintiff was not totally disabled because of the eye condition when he had the policy delivered to him on September 1, 1972, since he was able to continue working as he did; that he did not become totally disabled because of his eye condition until afterward—and until January of 1973, when it worsened to the extent that he had to discontinue attempting to work as a cabinet painter.

Nevertheless, pursuant to the definition given by the court to the special issue quoted from the Court's Charge at an earlier point in the opinion, "good health" as applied to the question involved relative to date of September 1, 1972, meant "state of health free from any disease or bodily infirmity of substantial nature which . . . materially increases risk to be assumed by the insurance company." The jury was entitled, as it obviously did, to decline to believe that the condition of plaintiff's eyes was because of disease.

The same thing would not be the case as applied to whether such condition of the eyes constituted a bodily infirmity. The degree of blindness which plaintiff suffered, of which he was aware according to his own evidence, constituted as a matter of law a bodily infirmity of a substantial nature which constituted a materially increased insurance risk over and above one which would not have been existent had such degree of blindness not been present on September 1, 1972.

In so holding we are not unaware of the decision in the case of Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943 (1944), where the opinion of the physician, as an expert, that on the date a deceased had been insured he was not in good health because he was then suffering from tuberculosis which was the cause of death was held not conclusive upon the issue. The premise for the holding was that judgments or inferences of experts or skilled witnesses, even when uncontroverted, are not necessarily conclusive on the jury or the trier of facts, unless the subject is one for experts or skilled witnesses alone, and where the jury or the court cannot properly be assumed to have, or to be able to form, correct opinions of their own based upon the evidence as a whole and aided by their own experience and knowledge of the subject of inquiry.

We are dealing in the instant case with an infirmity; an infirmity which is measurable as to degree and where it is the degree of infirmity which is controlling as applied to the determination of whether the degree of risk for purposes of insurance are materially increased. While in Dr. Smith we have an expert witness, his testimony is not upon a judgment or inference as to the degree of blindness on the part of the plaintiff, but factually upon the results of a scientific measure made with the cooperation of and at the solicitation of the plaintiff himself. That subject, the measuring and the results of the scientific measuring found existent, actually constitutes matter for experts or skilled witnesses alone, within the statements of *Coxson,* relative to circumstances where the jury or court cannot be assumed to have, or to be able to form, correct opinions of their own based upon the evidence as a whole and aided by their own experience and knowledge of the subject of inquiry. Here we have not only Dr. Smith's testimony, but further the fact that his findings upon degree of blindness were identical to the findings earlier made when plaintiff had tests made at a local hospital following inability to pass his eye test for driver's license renewal. Anyway, there is no question but that Dr. Smith was a disinterested witness whose credibility in the aspect considered is not questioned. The facts to

which he testified should be considered as established as a matter of law.

Under *Coxson* we have checked cases in which it was cited to determine if there were any involving evidence upon percentage of loss of sight or hearing and have found none in which the question considered here was resolved. Worthy of review, however, are discussions in Texas Prudential Insurance Company v. Dillard 158 Tex. 15, 307 S.W.2d 242 (1957) and Scott v. Liberty Mut. Ins. Co., 204 S.W.2d 16 (Austin Civ.App., 1947, writ ref., n.r.e.). See also Southwestern Law Journal, Vol. 22 for 1968, p. 30, the article by Professor Harvey L. Davis: "Insurance Law," particularly the text beginning on page 35 upon "The Applicant: 'Good Health;' 'Sound Health.'"

To this point our opinion has tracked that of October 25th, which was withdrawn. Because of an exceptionally well prepared Motion for Rehearing filed thereupon, we have investigated further to determine whether there be any basis upon which the judgment of the trial court might be affirmed. To affirm is our duty in the event such a basis may be found.

The plaintiff advances the proposition that by estoppel the insurance company should be found to have suffered loss of any right to prevail even should we persist, as we do, in our opinion that as a matter of law plaintiff was not in good health upon the date the policy of insurance was delivered.

It is insisted that the contention of the insurance company should be viewed in a sense as though it were a plea in confession and avoidance, or, indeed, as though the insurance company had itself brought suit to cancel and set aside the policy contract, with Garcia the defendant. In either event the insurance company's position would be one in which it should, as a condition to maintaining its suit, be obliged to make a tender of the policy premiums which it had received and retained. Otherwise, of course, the insurance company

would be seeking to unjustly enrich itself to the extent of such premiums.

The contention of plaintiff, explained in the above paragraph, is valid to the extent that Garcia would have been entitled to stop the prosecution of the insurance company's attempt to set aside and cancel the policy, or to avoid imposition of liability by its contractual provisions, by filing a plea of estoppel. The same would be true as applied to the condition of the pleadings upon which the parties went to trial in the instant case.

Here the insurance company, by its defensive pleadings, did not specifically seek to set aside and cancel the policy contract though in legal effect this was exactly what such company was seeking to accomplish. It was made plain by the pleadings, and later by the evidence, that its basic contention was that plaintiff, Garcia, never, at any time, had a viable contract of insurance. Yet, neither in the pleadings nor in the evidence was any tender made to return the premium amounts—or any portion thereof—back to plaintiff.

Were the circumstances such that the filing by plaintiff of a plea of estoppel should not be required of him in order to be entitled to the benefits of the doctrine of estoppel our conclusion might be different, but the circumstances of the present case was such that plaintiff had plenty of time and opportunity to have plead estoppel. He did not do so. Neither did he assert estoppel at time of the preparation of the court's charge to the jury, nor at time it was submitted to the jury. Nor was the contention found in plaintiff's appellee's brief upon submission of the case on appeal. It was presented for the first time in his Motion for Rehearing in this appellate court. Our holding is that it was waived.

■ Right to the benefits of the doctrine of estoppel may be waived, and it is waived where, as here, there was no pleading of estoppel by plaintiff to that pleading

of the insurance company in which it averred that it had no liability of any kind on the policy because by its provisions it had never become effective. Texas Rules of Civil Procedure, rule 94, "Affirmative Defenses"; 22 Tex.Jur.2d p. 689, "Estoppel", Sec. 19, "(Pleading and Proof) In general." For the insurance company to be prohibited from retaining the premiums as a benefit of its bargain, which is not permissible (see 22 Tex.Jur.2d p. 674, "Estoppel", Sec. 11, "Acceptance of benefits"), it is the duty of his adversary to plead estoppel and the facts giving rise to the defense, even as here, where the defense available to be plead is to estop the assertion of a particular policy defense such as the one upon which the insurance company relies. Nothing in the record before us reflects that the insurance company was legally charged with notice of the condition of the plaintiff at time of policy delivery or of his condition at such time when any premium was thereafter received and accepted. Therefore we see nothing of benefit to plaintiff in a case upon which it relies, viz: Law v. Texas State Mut. Fire Ins. Co., 12 S.W.2d 539 (Tex.Comm.App., 1929).

Another contention of plaintiff is that this court should not have rendered its judgment since the insurance company failed to take advantage of its motion for judgment *non obstante veredicto* and make complaint by point of error because of its denial. On appeal the insurance company has taken the position that it was entitled to a judgment as a matter of law because the jury should have found that plaintiff was not in good health at the material time, or that a new trial should be granted because the finding (refusal to find) was contrary to the great weight and preponderance of the evidence. The latter was the gist of complaint in an assignment of error presented to the trial court in the motion for new trial.

■ Such procedural election by the insurance company has no effect on the ju-risdiction of an appellate court which finds reversible error and, also, that the trial court should have rendered a different judgment. In such a situation, and that is our conclusion in the present case, its duty is to render the judgment the trial court should have entered. T.R.C.P. 434, "If Judgment Reversed".

And, still further, the plaintiff contends that the case should not be reversed because the insurance company did not fulfill the requisite that its assignment of error so sufficiently and explicitly point out and direct the attention of the trial court to the nature of the complaint as to enable understanding and thus avail to such court the first full and fair opportunity to correct its own error. T.R.C.P. 321, "Form (of motion for new trial)". For the insurance company to be entitled to raise the claim that as a matter of law the plaintiff was "not in good health" at time the policy of insurance was delivered to him that question must have been raised by the motion for new trial in order that it might be considered under a point of error by the appellate court. Meyer v. Great American Indemnity Company, 154 Tex. 408, 279 S. W.2d 575 (1955).

It could be only by paragraph XVI of the motion for new trial that the question was presented to the trial court, viz: "The Verdict is contrary to the evidence in that the undisputed evidence showed that the Plaintiff was not in good health at the time the policy in question was delivered to him."

In this court the insurance company's point of error No. VI repeated the above quoted paragraph. Its point of error No. III in substance did the same thing, with the contention that "there is no evidence to support the jury verdict with respect to Special Issue No. 8, in that the evidence establishes conclusively as a matter of law, that at the time the policy in question was delivered to Mr. Garcia, he was not in good health." Reference to the assignment of error to which the point was deemed

germane was to a "no evidence" complaint relative to evidentiary support for the answer to the special issue; and as such it is inappropriate, for the special issue was one upon which the insurance company bore the burden of proof.

Nevertheless the fact that the complaint was made served the purpose to clarify and show that the nature of the complaint by the insurance company was before the trial court and adequately revealed and specified, to-wit: (1) the company's contention was that as a matter of law plaintiff was not in good health at time the insurance policy was delivered to him; (2) that when the jury refused to so find its failure to make the finding should be disregarded and the contrary answer resolved against him as a matter of law.

Certainly, by the application of the text of Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, 482 (1943) there is no deficiency in the presentation of the question in the briefs. Our attention is to the foundation therefor in the assignments of error before the trial court. Such a question has been reviewed by the Supreme Court, along with Rules of Civil Procedure applicable thereto, to-wit: Nos. 1, 320, 321, 322, and 374. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887, 890 (1960).

From the entire record it is made plain that at all stages of the trial the court was aware of the contention of the insurance company that as a matter of law it should be found as a fact that plaintiff was not in good health at the time the policy of insurance was delivered to him. Under those circumstances we believe that we should disregard any doubt which might otherwise exist relative to whether the trial court did understand the complaint intended by Paragraph XVI of the motion for new trial and decide that it did understand. The primary purpose of the Rule is that the trial court should understand contentions and complaints. Here the objective must have been satisfied. Therefore the plaintiff's assertion that the insurance company failed to establish premise for its complaints in this court by assignments of error in the trial court should be overruled. Barron v. James, 145 Tex. 283, 198 S.W.2d 256, 260 (1946).

Judgment is reversed, and judgment rendered that plaintiff take nothing.