Carl B. FOX, Jr., Appellant,

v.

Harold L. BOESE et al., Appellees.

No. 17071.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 4, 1978.

Rehearing Denied June 1, 1978.

Eikel & Davey, Robert Eikel, Houston, for appellant.

Talbert, Giessel & Stone, William S. Bush, Henry P. Giessel, Houston, for appellees.

COLEMAN, Chief Justice.

This is an appeal by the plaintiff in a suit for attorney's fees from the judgment entered on the verdict of a jury. The judgment will be affirmed.

Carl B. Fox, Jr., the plaintiff, is a well qualified and experienced patent attorney. On December 1, 1970 one of the defendants, R. Layton Hazelip, retained Fox to do the legal work necessary to obtain a patent on a cryogenic system by which an electric motor could be cooled so as to greatly increase its efficiency. Fox immediately began work on the matter and on August 1, 1972 a patent was issued.

There was an agreement that Fox would charge $600.00 plus expenses for preparing the patent application. This fee was paid when the application was filed. Fox continued to render services in connection with this application and also with applications for patents in eight foreign countries. He rendered a bill for these services which was paid on January 22, 1971. At that time Hazelip told Fox that he had paid all he could on the project and asked Fox to continue work with the understanding that he would be paid at an undefined future date. Fox agreed to this proposition. Subsequently a dispute arose over the amount of

the fee which was charged by Fox and this suit resulted.

The case was submitted to the jury on one special issue which in essence inquired as to what amount the defendant should pay to the plaintiff for the services rendered to the defendants. The jury answered "$6,500.00" and judgment was rendered for the plaintiff in that amount.

Fox complains in two points that "The Court erred in submitting the case to the jury" because from the undisputed and uncontradicted evidence the appellant was entitled to recover a judgment in the amount of no less than $48,000, and because the answer made by the jury is contrary to the great weight and overwhelming preponderance of the evidence, or, alternatively, because said answer is supported by insufficient evidence. A point is also presented that the court erred in overruling the plaintiff's motion to disregard the jury's findings and for judgment non obstante veredicto because a directed verdict in the amount of no less than $48,000.00 should have been given.

Since each of these points attacks the action of the court in entering a judgment on the issues these points are all "no evidence" points. *Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc.*, 462 S.W.2d 276 (Tex.1970). We are, therefore, required to review the evidence and the reasonable inferences therefrom most favorably in support of the jury's finding. Before we can sustain either of these points we must determine that there is no evidence to support the finding made by the jury. When considering a no evidence point this court must disregard all evidence adverse to the finding of the jury and consider only the evidence favorable to the finding, indulging every legitimate conclusion which tends to support the same. *Fisher Construction Co. v. Riggs*, 160 Tex. 23, 325 S.W.2d 126 (1959); *Travelers Ins. Co. v. Williams*, 378 S.W.2d 110 (Tex.Civ. App.-Amarillo, 1964, writ ref'd n. r. e.).

After the agreement between Fox and Hazelip that Fox would work on credit there is evidence that Fox had a number of conferences with Hazelip and with Hencey and Boese involving the processing of the applications at the patent office and also such matters as taxes and the assignment of the patent application and the licensing and/or sale of the patent. In 1971 the patent office advised Fox that the applications had been rejected necessitating additional work on his part in making amendments to the application. In November of 1971 Fox sent Hazelip an invoice in the amount of $2,179.34 for fees and disbursements subsequent to January 22, 1971. As an addendum to this statement Fox noted on the invoice that he should have charged approximately $3,000.00 more but that in view of defendant's problems he just "forgot" to bill for all the time spent. This statement did not result in a payment but Fox continued working.

In January, 1972 in response to a request for a settlement figure Fox agreed to accept in payment the sum of $5,700.00. No payment was made in response to this proposal. In February of 1972 Fox, at the request of Boese, attended a conference with certain investors and the defendants in Alvin, at which time he met A. Guy Crouch and Mark T. McGee. Fox discussed with them the value and feasibility of the invention. On March 19, 1972 McGee and Crouch agreed with the defendants to pay $500,-000.00 down and annual payments of $3,000,000.00 for an assignment to McGee and Crouch of a one-fifth interest in the invention contingent upon the issuance of patents. There is evidence that at this meeting an understanding was reached that Crouch would pay Fox for future services. At that time he paid him $2,000.00 in advance. Beginning April 10, 1972 and continuing through February 14, 1973 Fox rendered bills to Crouch totalling over $15,-000.00.

Prior to the February, 1972 meeting there had been discussions between Fox and the defendants of an arrangement whereby Fox would receive a percentage of the compensation which the defendants would in the future receive from the invention. No agreement was worked out satisfactory to

all parties. After the February meeting there is testimony that Fox attempted to re-open and re-negotiate a percentage arrangement. Hencey testified that when he refused to agree to such an arrangement Fox stated that he would refigure everything he had ever done and make up a bill. Thereafter he orally communicated to the defendant that he would settle for $5,789.32.

On July 31, 1972, Fox sent each of the defendants an invoice for legal services in the amount of $10,000.00 plus 5% override based on income to be received by defendants from the patent. He testified that the invoices were based on the opinions of several prominent attorneys as to a reasonable charge for his services in obtaining the patent and also upon the defendants' promises that he would participate in the value of the invention. In his brief he states that the invoices were also based upon Fox's having spent on the project on the average approximately three hours every working day from December, 1970, until the end of May, 1971, for a total of 378 hours during which period he was charging $50.00 an hour for a total of $18,900.00. The brief states that the invoices were also based on Fox's having during the period from June, 1971 to early 1972 devoted approximately 168 hours during which period he was charging $60.00 an hour for a total of $10,-080.00, and approximately 252 hours at $60.00 an hour, or $15,120.00, which he had expended on the patent subsequent to early 1972. It must be noted, however, that the invoices show payment of charges prior to January 22, 1971. This statement is inconsistent with the statement of November 29, 1971 and disregards the evidence that in April, 1972 payments were made and charges incurred by Mr. Crouch. Mr. Fox failed to present time sheets or other data to substantiate his estimate of the number of hours which he spent working on the case.

At the trial Mr. Fox called an expert witness who testified that based on the testimony which he heard during the trial the sum of $50,000.00 would be reasonable compensation for Fox's services. He also testified that for the time prior to June, 1972 $50.00 per hour and for the time subsequent to that date $60.00 per hour was a fair basis for the calculation of fees.

■ The appellant contends that the opinion testimony of an expert is conclusive where the jury cannot properly be assumed to have, or be able to form, correct opinions of their own based upon the evidence as a whole and aided by their own experience and knowledge of the subject of inquiry. We do not question the soundness of this rule. *Coxson v. Atlantic Life Ins. Co.*, 142 Tex. 544, 179 S.W.2d 943 (1944); *Exxon Corporation v. West*, 543 S.W.2d 667 (Tex. Civ.App.-Houston, 1st Dist., 1976, writ ref'd n. r. e.).

■ In this case, however, there is evidence as to the per hour value of the attorney's services and of the number of hours which he spent on the case in addition to the bills presented to the defendants by the plaintiff. The jury was not bound by Fox's testimony that the $5,700.00 bill was a "salvage" figure, nor was it bound by his estimate as to the number of hours which he had spent on the case. We see no reason why a jury would not be able to form correct opinions concerning a reasonable attorney's fee based upon evidence such as was before them in this case. As a general rule the testimony of an expert witness is not binding on the jury. *Coxson v. Atlantic Life Ins.Co.*, 142 Tex. 544, 179 S.W.2d 943 (1944); *Houston Lumber Supply Co. v. Wockenfuss*, 386 S.W.2d 330 (Tex.Civ.App.-Houston, 1st Dist., 1965, writ ref'd n. r. e.).

In connection with special issue no. 1 the trial court submitted an instruction in the following language:

"...

"You will be guided by what was fair and reasonable at the time the services were rendered. Consideration may be given to the amount of time spent, the complexity of the problems and the skill and experience of the attorney. . ."

**686**

The plaintiff objected to this charge as being inadequate and insufficient because the court failed to advise the jury that they could consider the value of the property interest involved, the extent of the responsibility assumed by the attorney, whether further employment was lost by the attorney, and the benefits resulting to the clients from his services. Each of these elements is a matter which an attorney may properly consider in setting a fee for legal services. D. R. 2–106, Code of Professional Responsibility, Vol. 1-A, Texas Civil Statutes, pages 300–301; *Braswell v. Braswell*, 476 S.W.2d 444 (Tex.Civ.App.-Waco, 1972, writ dismissed); *Hundere v. Tracy & Cook*, 494 S.W.2d 257 (Tex.Civ.App.-San Antonio, 1973, writ ref'd n. r. e.). In this case, however, we conclude that the trial court did not err in failing to include in the instruction the elements pointed out by the plaintiff. The hourly rate charged by the plaintiff is in evidence. The expert witness testified that these rates were reasonable. This testimony is not contradicted. It will be presumed that the plaintiff and his expert witness considered all of these elements in fixing the hourly rate. The instruction given by the trial court did not limit the jury to the elements specifically set out. The various factors involved in fee setting by an attorney can be developed in the evidence, but it is not necessary that the trial court instruct the jury on the factors which may be considered in determining a reasonable fee. See, *Hundere v. Tracy & Cook*, supra.

Where, as here, the trial court undertakes to give an explanatory instruction it should encompass all relevant factors which would enter into the setting of a fee that have support in the evidence. This the trial court failed to do.

The record viewed as a whole does not afford any substantial basis for a belief that the failure of the trial court to include additional factors in his explanatory instruction was such an error as was reasonably calculated to cause and which probably did cause the rendition of an improper verdict. Rule 434, Texas Rules of Civil Procedure.

The judgment is affirmed.