In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-569 CV


____________________



DAWN WHITE, INDIVIDUALLY AND AS INDEPENDENT


EXECUTRIX OF THE ESTATE OF BETTY STARK,


AND KEVIN STARK, Appellants



V.



JOHN LINTON, Appellee






On Appeal from the 159th Judicial District Court


Angelina County, Texas


Trial Court Cause No. 33107-00-5






MEMORANDUM OPINION


 Dawn White and Kevin Stark sued John Linton; they allege Linton's negligent
operation of a vehicle caused the death of their mother, Betty Stark. The jury awarded
$999 in medical expenses, no damages for pain and mental anguish, and zero damages for
funeral expenses. The jury did not answer Question 2 (regarding Dawn White's damages
for the death of Betty Stark) or Question 3 (regarding Kevin Stark's damages for the death
of Betty Stark). (1) The trial court entered judgment in the amount of $1,272.70, which
included medical expenses plus prejudgment interest. White and Stark contend the
evidence is factually and legally insufficient to support the jury's verdict of zero damages
for pain and mental anguish.

 Betty Stark was a passenger in a car involved in an accident on November 24, 1999. 
Linton stipulated his negligence proximately caused the occurrence. Stark refused an
ambulance at the scene of the accident. Deputy Roy Wade, who completed the incident
report, testified that the air bags did not deploy in either vehicle, and he rated the damage
to the Stark vehicle as 2 on a scale of 1 to 5. Wade also testified he rated Stark's injuries
as Code B, meaning that she had bruises, abrasions, or minor lacerations, but the injuries
were not incapacitating. Stark testified by deposition that her lower back began hurting
that night and continued to ache until she saw the doctor the following Monday. She also
testified she had bruising and soreness due to the seat belt. 

 Stark sought treatment from Dr. Jack McNeill. After noting that Stark complained
of low back pain and slight left leg pain, and displayed symptoms of pain upon rotation,
Dr. McNeill diagnosed her with acute low back strain with possible nerve root irritation,
and prescribed physical therapy and pain medication. Stark saw Dr. McNeill on three
more occasions after the diagnosis. Appellants did not present any testimony from Dr.
McNeill at trial, but only introduced the medical and billing records. Dr. McNeill's billing
records show that the cost of treatment was $999.00. 

 Before the accident, Stark had been diagnosed with primary pulmonary hypertension
(PPH), a fatal lung disease. Because of the PPH, Stark required an indwelling catheter,
which continuously administered a medication called Flolan directly into a vein in her
chest. Because the chest wall is relatively immobile, the chest is the preferred location for
an indwelling catheter. At the time of the accident, Stark was being treated with Flolan
via the catheter in her chest. She was also receiving Coumadin, a blood thinner. Her
treating physician for the PPH was Dr. Adaani Frost. Dr. Frost testified that, because
Stark responded very well to the Flolan, she had anticipated Stark would live for six and
one-half to seven years.

 In March of 2000, Stark developed superior vena cava syndrome (SVCS), a disease
in which the large vein that drains the blood vessels from the brain, neck, upper limb
girdle, and upper chest is obstructed by a large clot. As a result of the SVCS, her blood
thinner dosage had to be increased. After Dr. Rafael Espada performed open heart surgery
to remove the clot, Stark could no longer have a catheter in her chest, so Dr. Espada
placed a catheter in Stark's groin. When Dr. Frost examined Stark in September of 2000,
she noted that the catheter appeared to be dislodging. In October, a local hospital installed
a temporary catheter, and Dr. Espada later implanted a permanent catheter. Subsequently,
Stark sought emergency medical treatment after she awoke with severe abdominal pain.
Stark was diagnosed with abdominal bleeding, and she died on October 11, 2000.

 Appellants say the jury's failure to award damages for pain and mental anguish is
so contrary to the great weight and preponderance of the evidence as to be manifestly
unjust. A party attacking the legal sufficiency of an adverse finding on which she had the
burden of proof must demonstrate on appeal that the evidence conclusively established all
vital facts in support of the issue. See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241
(Tex. 2001). When a party attacks the factual sufficiency of the evidence supporting an
adverse finding on which she had the burden of proof, she must demonstrate that the
adverse finding is against the great weight and preponderance of the evidence. Id.; see
Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). 

 Plaintiffs' argument is that the accident caused their mother's death, so we first
consider the evidence of the cause of death. Plaintiffs presented expert testimony to
support their claim that Stark's death was caused by the accident. Dr. Frost opined that
a deceleration injury Stark suffered in the accident caused trauma to the large blood vessel
which contained the catheter. Dr. Frost also testified that Stark's abdominal hemorrhage
was caused by the placement of the catheter. According to Dr. Frost, the blood thinner
Stark was taking slowed the development of a clot, but was not sufficient to protect her
from the consequences of a traumatic injury. Dr. Frost testified that clots, on average, do
not develop until sixteen weeks after an injury, and the delay between injury and clot
formation may be as long as forty-eight weeks. Dr. Frost also testified that Dr. Espada's
consultation report attributed the clot to seat belt trauma suffered during a motor vehicle
accident.

 Dr. Frost testified that, because SVCS is very rare and she had never seen a patient
on blood thinners develop a clot like Stark's, she searched the medical literature for
possible causes of the clot. According to Dr. Frost, although patients with catheters can
develop blood clots, those who are on blood thinners do not develop clots. Dr. Frost
stated the medical literature supports the position that trauma can cause SVCS, even in the
absence of catheters. When questioned as to whether Stark's death was caused by the car
accident, Dr. Frost testified as follows:

 Even though it seems like a long chain of events, it's clear that the bleed was
due to the catheter and the blood thinners. They were necessitated by the
superior vena cava syndrome and the huge operation. And the superior vena
cava syndrome was caused by the trauma that she sustained during the motor
vehicle accident. And all the time sequences are completely appropriate. 
And based on that, I think the final cause of her death was immediately
attributable or ultimately attributable to the trauma she sustained with that
motor vehicle accident.


Dr. Frost also testified that Stark's medical expenses from Methodist Hospital and Dr.
Espada were necessitated by the car accident and were reasonable.

 On cross examination, Dr. Frost admitted decedent's catheter had to be replaced
once prior to the accident because it had partially dislodged; Stark had a history of
smoking; Frost did not examine Stark until almost four months after the accident; the
manufacturer of the catheter lists clotting in its product information as a potential
complication; no autopsy was performed; an autopsy would have firmly established the
cause of the bleeding; many of the articles upon which she relied in formulating her
opinion about causation did not involve trauma; and the articles which did involve trauma
concerned patients in more severe accidents than the one at issue.

 The defense presented expert testimony that Stark's death was unrelated to the
accident. Defendant's expert, Dr. Robert Savage, testified that catheters can cause clot
formations in the superior vena cava. He also stated blood clots pose a significant problem
even in patients receiving Coumadin, and studies show that a significant number of clots
in the superior vena cava are caused by the presence of a catheter. According to Dr.
Savage, a 1981 Mayo Clinic study found that three of nine cases of SVCS were due to use
of central venous catheters, and warned that physicians should be aware of the association. 
Dr. Savage also testified that he did not find any articles stating trauma could cause SVCS
or that a deceleration injury could cause clotting in patients with indwelling catheters. Dr.
Savage testified that one of the articles relied upon by Dr. Frost did not support her
position because the article indicated that thrombosis is a major complication with
catheters. Dr. Savage stated that the medical literature contains no evidence the type of
trauma Stark sustained can cause blood clotting and he opined that the accident was
"totally unrelated to the formation of the blood clot." Dr. Savage also stated that the cause
of Stark's death could not be conclusively determined without an autopsy. Dr. Savage
classified the accident as a minor impact collision, and he opined that the accident was
unrelated to Stark's death.

 On cross examination, Dr. Savage admitted he did not do the medical research
himself; he was not currently practicing at a teaching medical facility and was not a
medical researcher; he had only treated two or three patients with PPH; Dr. Frost had
more expertise than he in treating PPH; huge clots in the large veins occur in less than one
percent of patients with catheters; he relied upon information provided by defense counsel
in classifying the accident as a minor impact; he had never seen the police report or
pictures of the vehicles; and he had provided causes of death on death certificates without
an autopsy. 

 A court of appeals may not pass upon witness credibility or substitute its judgment
for the jury's. See Pool, 715 S.W.2d at 633-35. As factfinder, the jury is free to
disbelieve expert witnesses. See Waltrip v. Bilbon Corp., 38 S.W.3d 873, 882 (Tex.
App.-- Beaumont 2001, pet. denied); see also Yap v. ANR Freight Sys., Inc., 789 S.W.2d
424, 427 (Tex. App.--Houston [1st Dist.] 1990, no writ). "[O]pinion testimony, even
when uncontroverted, does not necessarily bind the jury." Waltrip, 38 S.W.3d at 882. 

 [T]he judgments and inferences of experts or skilled witnesses, even when
uncontroverted, are not conclusive on the jury or trier of fact, unless the
subject is one for experts or skilled witnesses alone, where the jury or court
cannot properly be assumed to have or be able to form correct opinions of
their own based upon evidence as a whole and aided by their own experience
and knowledge of the subject of inquiry. 


McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986) (citing Coxson v. Atlanta Life
Ins. Co., 142 Tex. 544, 179 S.W.2d 943, 945 (1944)). Here, the experts disagree. 
Obviously, the jury believed defendant's expert and not the expert testimony offered by
plaintiffs. The jury's finding is supported by legally and factually sufficient evidence that
the pain and mental anguish Stark suffered was unrelated to the accident. 

 Appellants also say on appeal Stark's complaints of pain following the accident
require an award of damages for pain and mental anguish. This Court has previously
noted, as follows, that an award of medical expenses does not necessarily require an award
for pain and suffering: 


 The law does not automatically assume that an award of medical expenses
is necessarily in conflict with a zero award for pain and suffering. The law
does not automatically assume that this finding is so against the great weight
and preponderance of the evidence as to be manifestly unjust. For purposes
of . . . all future cases, strict application of the so-called automatic "zero
damages rule". . . is explicitly disapproved by this Court. 


Waltrip, 38 S.W.3d at 880 n. 2. When the plaintiff's symptoms are subjective, or the fact
of an objective injury to the plaintiff is not necessarily tied to the incident in question, the
jury may award medical expenses for diagnostic purposes and yet not make an award for
the plaintiff's subjective complaints of pain and suffering; the jury simply may not believe
pain and suffering were caused by the occurrence in question. See Waltrip, 38 S.W.3d at
880. The only evidence of back and leg pain consisted of Stark's subjective complaints,
and Dr. McNeill's records and treatment were based on her subjective complaints. "[T]he
presence or absence of pain, based on the subjective complaints of an individual, is not a
subject for experts or skilled witnesses alone." Waltrip, 38 S.W.3d at 882. Also, to
prevail on a mental anguish claim, a plaintiff must present direct evidence of the nature,
duration, and severity of her mental anguish, and prove a substantial disruption in her daily
routine. See Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995); see also Gunn 
Infiniti, Inc. v. O'Byrne, 996 S.W.2d 854, 860 (Tex. 1999); Saenz v. Fidelity & Guar. Ins.
Underwriters, 925 S.W.2d 607, 614 (Tex. 1996). The jury was free to disbelieve Stark's
testimony, and was free to believe the car accident was not a proximate cause of pain and
mental anguish. 

 The evidence in the record is legally and factually sufficient to support the jury's
verdict. Appellants' issue is overruled. The judgment of the trial court is affirmed.


 AFFIRMED. 

 PER CURIAM


Submitted on July 2, 2004

Opinion Delivered October 7, 2004 


Before McKeithen, C.J., Burgess and Gaultney, JJ. 
1. The jury was instructed as follows: "If you find from a preponderance of the
evidence that the death of Betty Stark resulted from the occurrence in question, then
answer Questions 2 and 3. Otherwise, do not answer Questions 2 and 3."