Wanda L. TARVER, Appellant,

v.

COUNTY OF JASPER, Appellee.

No. 09–95–219CV.

Court of Appeals of Texas, Beaumont.

Aug. 29, 1996.

**796**

Don Bush, Bush, Lewis, Ramsey & Roebuck, P.C., Beaumont, for appellant.

David E. Bernsen, Bernsen, Jamail & Goodson, Beaumont, for appellee.

Before WALKER, C.J., and STOVER and SPURLOCK,[1] JJ.

1. The Honorable Joe Spurlock II, sitting by assignment pursuant to Tex. Gov't Code Ann.

## OPINION

SPURLOCK, Justice (Assigned).

Wanda L. Tarver, appellant, sued appellee, the County of Jasper under the Texas Tort Claims act alleging negligence by the county in allowing a special defect to exist on a county road, and alleging that the defect was a proximate cause of an accident and damages to her. Trial was to a jury. Appellant and appellee were each found to be fifty percent responsible for the accident. The jury did not award appellant any damages. The trial court denied appellant's motion for new trial which was based on the jury finding of no damages. Tarver has appealed in a single point of error alleging that the jury finding of no damages was manifestly too small and against the great weight and preponderance of evidence, as the evidence was undisputed that she had sustained injury and damage as a result of the accident. We disagree, overrule the point of error, and affirm the judgment.

The testimony at trial was that while driving down a county road in Jasper County, Texas, appellant encountered a washout that extended well into the roadway. The right front tire went into the washout causing her to lose control of her vehicle and to strike a tree. She alleges that she was "shaken up" and appeared to be injured according to the testimony made by state trooper Wright who investigated the accident. Wright noted that at the scene, appellant was in a lot of pain and complained of pain in her chest area, which he believed was caused by her seat belt, and that her blood pressure was erratic, her level of consciousness was somewhat less than normal, she was confused, forgetful, and that he was concerned about her physical well-being. He testified by video deposition that the hole in the road caused the accident and that any reasonably alert county employee could have seen the problem. In his accident report, he noted that appellant had suffered a non-incapacitating injury, Code *B*. Appellee notes that the trooper did *not* mention any injuries in his deposition introduced as testimony. We have reviewed the testi-

§ 74.003(b) (Vernon 1988).

mony in its entirety, and set it out to show what difficulties the jury had in weighing their decision. Trooper Wright said:

> Yes, sir. I found a white Ford Mustang that was off the roadway, along with the driver and sole occupant, a Wanda Lynn Tarver. She was later identified as Wanda Lynn Tarver. She was still sitting behind the steering wheel of the car. I went to assess the situation and if there were any injuries to her.
>
> The accident had been reported as an accident with injuries. I expected her to be injured. She appeared to be injured. She was still sitting there. She was very shaken by the accident and I asked her what happened. And she said that she just didn't know.
>
> After attending to her medical needs and getting her an ambulance and medical assistance summoned, I went back and tried to retrace the path taken by her car and I—that's when I found the hole in the side of the road, ...

Later in his deposition, when asked about Mrs. Tarver's physical and emotional condition at the scene of the accident, he testified:

> Yes. She was very upset emotionally. She was in a lot of pain physically. I—it took a—seemed like an awfully long time to get an ambulance out there....
>
> Mrs. Tarver was complaining of pain in her chest area, and I felt that that was probably caused by seat belt restraint type injuries. Her—her blood pressure was erratic. I took it myself in my attempt to try to administer first aid. Her level of consciousness was somewhat less than I felt like it should be for a normal person. She was confused, forgetful; and I was—I was very concerned about her health.

He concluded his testimony in this fashion:

> Q. Okay. And again, as a DPS trooper, you have received some training in tending to a victim at the scene?
>
> A. Yes. We receive basic first aid training.
>
> Q. Okay. And you stayed there close with her and tended to her until the ambulance emergency medical people could arrive and treat her?

> A. Exactly.
>
> Q. Okay. Going back to the—to the roadway and the hole in the road....

The above testimony was elicited by appellant's trial attorney, and is the *entirety* of Trooper Wright's testimony about any injuries he observed of Mrs. Tarver.

Tarver's husband testified that at the accident scene he observed a bruise on appellant's forehead and a knot up on the side of her head. No one other than appellant and her husband reported observing any such bruise or knot. The records from Trans–Star EMS, which transported Ms. Tarver to the hospital, show that she complained of right hip and left leg pain with no deformities, but it was noted that her leg had a contusion over the mid shaft femur (which leg is not indicated). Other notations were that she had *no* lacerations and her extremities were unremarkable. She was placed on oxygen and transported to St. Elizabeth Hospital. The hospital emergency room notations are that a bruise was present on her right thigh and she was complaining of neck, head, right shoulder and right hip pain. There were *no other* notations of bruises on her on examination and she had *no* obvious signs of injury at that time. The report notes her pupils were equally reactive and there were *no* signs of distress. The examining physician at the hospital (Dr. Warren) noted *no* fractures, *no* localizing neurological signs, *no* abnormalities of the intra-abdominal organs, and that she moved all of her extremities well. He noted a bruise over the *left* anterior tibia—*not* any right thigh bruise, *nor* any knot or bruise on her head.

Four days after release from the hospital, appellant received treatment from Dr. Jack McNeill in Beaumont for occipital headaches and neck pain. He noted appellant expressed some limited extension with pain, in physical examinations, and right rotation of her neck was painful and limited. His diagnostic impression was cervical strain. X-rays of facial bones and cervical spine were negative. Appellant also saw him for occasional headaches later. Her medical bills amounted to $6,051.76. A later treating doctor (Dr. Clark) noted one year after the accident that appellate suffered from post concussive head-

ache syndrome which she was working into a migrainous-type headache situation. He was most concerned that she was not following her medication routine properly.

Appellant argues that the above undisputed and overwhelming evidence introduced at trial showed that she suffered objective and clear signs of injury relating to the accident. She further argues that the jury erroneously disregarded this objective and undisputed evidence by finding no damages, and she was therefore entitled to a new trial. She requests that we reverse the decision of the trial court, order a new trial, and remand this case to the trial court for further proceedings.

She supports her argument with the following observations. When a jury awards damages that are manifestly too large or too small, a new trial can and should be ordered by the trial court. Tex.R. Civ. P. 320. She argues that case law holds that although the amount of damages awarded in a case is normally left to the discretion of the jury, the jury cannot "ignore undisputed facts and arbitrarily fix an amount of damages which is neither fair nor just." *Jacobs v. York*, 662 S.W.2d 137, 138 (Tex.App.—Fort Worth 1983, no writ). Further, "where there are substantially undisputed objective symptoms of injury, a jury cannot ignore the undisputed facts and arbitrarily deny any recovery." *Id.* We agree with this authority and note in *Jacobs*, Justice Hughes writing for the court commented: "The jury here found injury and should have awarded some amount of money as damages." *Id.* Additionally, we note this court has held in *Dupree v. Blackmon*, 481 S.W.2d 216, 219 (Tex.Civ. App.—Beaumont 1972, writ ref'd n.r.e.), that the jury "cannot ignore the undisputed facts and arbitrarily deny any recovery." Generally stated, the law is that where the facts are undisputed that an injury occurred (causally connected to the incident in question), some damages, if proved, must be awarded by the jury.

Appellant argues that the fact she was injured is undisputed because the state trooper, who had been trained in emergency medical care and first aid, noted she had an injury code of *B* (indicating a non-incapacitat-

ing injury), and the ambulance attendants noted she had a contusion on her femur, as did the emergency medical personnel at the hospital. She argues that all of the reports reflect that she was in pain. In fact, medication was prescribed for the pain. Further, the doctor following up on her accident noted she was still having pain, as did a subsequent doctor who treated her neck strain and headaches. She argues that no where is there one shred of evidence to show that she was not injured, therefore, it is unquestioned and undisputed that she was injured which the jury ignored in failing to award her any recovery.

Appellant also argues that at the trial of the case, a county commissioner, an official representative of the county, *clearly stated* that he did not dispute that she was in fact injured in the accident. However, we have reviewed the testimony offered by appellant in this regard and disagree with her conclusion. Commissioner Rose answered a question—which was a double negative containing a hypothetical "probably"—wherein he agreed with another witness. This is not an unequivocal admission against interest in our opinion. We do not find there was a judicial admission on this point. In addition, appellant quotes in her brief that Dr. McNeill noted in his follow-up records "that she was still having pain *that he attributed to the accident in question*." We have reviewed the records and do *not* find this quote nor do we find the quote she references when she says "as did Dr. Clark, *who attributed all of her neck strain and the post concussion migrainous headaches to the accident.*" We disapprove of counsel's quoting statements not in the record. Dr. Clark did *not* attribute any cause to the alleged neck strain, and responded to a long hypothetical question about causation with this statement: "Everything you said being given as history and assumed correct, I'd have to say, yes."

Appellee disagrees that the evidence is undisputed. It argues that the verdict was proper and within the discretion of the jury because appellant's evidence of her injury was controverted. The jury was therefore free to believe or disbelieve appellant's witnesses and to award no damages if it were

determined by them that she suffered no injury. Appellee argues that although the state trooper's report was that appellant suffered a "non-incapacitating injury" which could include bruises, the trooper did not say in his deposition that appellant was bruised or that he saw any signs of injury. In fact, the only objective symptom the trooper mentioned was appellant's blood pressure.

Appellant counters that the trooper "found *obvious and apparent signs of injury caused by the accident.*" Having set out the testimony in full above, we conclude that argument is simply *not* true. We agree with appellee that the only symptoms of injury the trooper testified to were appellant's level of consciousness and forgetfulness, which are of a subjective nature, and some erratic blood pressure. We further note her blood pressure was normal while in the emergency room of the hospital.

Appellee observes that the appellant's husband, Dewayne Tarver, who arrived shortly after the accident and before the trooper, testified he observed a bruise on the right side of the appellant's head and a knot upon the side of her head. However, appellant's testimony of where the knot and bruise were located was inconsistent with her husband's testimony. No one else saw these injuries. Further, the hospital report by Dr. Warren which mentions a bruise on the interior of her left tibia, notes *no other objective symptoms of injury,* but notes those of a *subjective* nature such as neck and stomach pain. His report shows appellant's x-ray and CAT scan were normal and that she was oriented and could move her extremities well. When appellant saw Dr. Clark on a day between May 5, 1993 and August 26, 1993, and again on April 21, 1994, her complaints then were severe headaches and numbness and tingling in fingers and legs and double vision. However, Dr. Clark only indicates appellant told him of subjective soft tissue type symptoms such as tenderness in the neck muscles, and he recorded that her neurological functions were completely normal.

■ The proper standard for review by an appellate court when considering a jury's no damage determination is whether or not the verdict is against the great weight and preponderance of evidence based on the entire record. *Monroe v. Grider,* 884 S.W.2d 811, 820 (Tex.App.—Dallas 1994, writ denied). The verdict should be reversed and remanded *only* if it is so against the weight and preponderance of the evidence that it is manifestly unjust. *Id.* Even if the evidence would support a different result, an appellate court is not a fact finder and may not pass upon the credibility of the witnesses, nor interfere with the jury's resolution of conflicts and evidence, nor substitute its judgment for the trier of fact. *Kratz v. Exxon Corp.,* 890 S.W.2d 899, 904 (Tex.App.—El Paso 1994, no writ). Further, appellee notes and we agree, that the jury is free to conclude from the evidence (absent bias or prejudice), that any injury was not established through a causal connection related to the accident made the basis of the suit. *Jackson v. Killough,* 615 S.W.2d 274, 275 (Tex.Civ. App.—Dallas 1981, no writ). Accordingly, if there is sufficient competent evidence of probative force to support a jury finding, it must be sustained. *Kratz,* 890 S.W.2d at 904.

■ We agree with the appellee that the appellant did not present uncontroverted evidence of any objective injury. We conclude that it was within the jury's discretion to award zero damages based on the credibility of appellant and her witnesses. As noted by Justice Keith of this court, in his concurrence in *Dupree:*

> If the plaintiff has objective symptoms of injury, i.e., a cut or laceration of his body as in this instance, and there is readily available testimony which the defendant could offer to refute such fact, plaintiff's evidence cannot be disregarded by the jury when the defendant fails to refute it.

> On the other hand, if plaintiff's complaints are subjective in nature, i.e., headaches, which the defendant may not readily dispute, then the negative answer of the jury to the damage issue will not be disturbed when it rests upon the testimony of plaintiff alone.

*Id.* at 221, Keith, Justice, concurring.

There was controversy over whether or not the appellant suffered any injury, however, the case was submitted to the jury with-

out an inquiry as to the fact of injury. Neither the x-rays nor CAT scans revealed any objective signs of facial or neck injury or damage to internal organs. The trooper at the scene did not describe then nor testify later about any visible injuries. Appellant's complaints about alleged injuries including bruising or swelling of her right hip, swelling of a knot to the head, bruises over the left eye, neck and shoulder pain, intense headaches, stomach aches, disorientation and inability to keep her head up in the emergency room, are *not* supported by other evidence. Appellee notes that appellant's complaints about her level of consciousness and forgetfulness are very subjective in nature and not objective, as are her complaints of headaches and soreness.

There *was* an emergency room report that appellant had a bruise on her right thigh, but there was no direct connection made from that bruise to the accident. Appellee argues this could have existed prior to the accident in question. Further, there was a difference in the testimony of appellant and the report of Dr. Warren about what she says she told him in the hospital and what he observed and noted in his report. In the emergency room entry made by Dr. Warren, he recorded appellant moved all of her extremities well. Appellant, however, claimed that when she went in for X-rays at the hospital, she couldn't even lift her head up to turn, and in fact, couldn't turn it at all. Dr. Warren made no notation about this, nor about any alleged bruises on the appellant's head, nor any bruising or swelling of her right hip, nor any progressively worse headaches, nor any disorientation, to which appellant testified she had reported. There was, in fact, *no* indication of any of these symptoms in the emergency room report made by Dr. Warren.

Appellant testified that four days later at Dr. McNeill's, she had a bruise on her thigh the size of a grapefruit with a hard knot in it and a bruise on her forehead. However, the notations made by the doctor in his report are of a subjective nature only and include her complaints of soft tissue injuries such as head pain, neck pain and muscle pain. The appellant's alleged objective symptoms (such as a grapefruit-sized bruise on her left thigh and knots on her head) *are not mentioned* in Dr. McNeill's report.

Without reviewing every single line of the testimony, it is clear to us that the jury could have concluded from a preponderance of the evidence that the appellant in fact suffered no injury as a result of the accident. This is specifically the argument appellee's attorney made in closing, and that the appellant's evidence was not credible. In so doing, he fully recalled for the jury all of the inconsistencies in the claims made by appellant about her injuries, and the lack of any observations of any injuries by the medical witnesses or the state trooper.

The jury obviously concluded she suffered no injury, and consequently, there was no basis upon which the jury could award appellant any damages. This verdict must stand because it is not against the great weight and preponderance of the evidence. We overrule the point of error and affirm the judgment of the trial court. Cost of the trial and this appeal are assessed against appellant.

AFFIRMED.