Ethel Estell **WALTRIP** and Eric M. Culver, Appellants,

v.

**BILBON CORPORATION** a/k/a National Concrete Products, Appellee.

No. 09–00–063 CV.

Court of Appeals of Texas, Beaumont.

Submitted Jan. 23, 2001.

Decided March 15, 2001.

---

14. *Id.*

15. *Id.* at 343.

16. *Id.*

17. 518 S.W.2d 528 (Tex.1975).

18. *Id.* at 529.

19. *Bossley,* 968 S.W.2d at 343.

John Werner, Cris E. Quinn, Reaud, Morgan & Quinn, Inc., Beaumont, for appellant.

Karen L. Spivey, Pate & Dodson, L.L.P., Beaumont, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

WALKER, Chief Justice.

Ethel Estell Waltrip and Eric M. Culver appeal a judgment rendered on a jury verdict in their favor and against Bilbon Corporation, also known as National Concrete Products ("Bilbon"). Waltrip and Culver ("appellants") sued Bilbon for injuries allegedly incurred when appellants' vehicle was rear-ended by a "Mack" truck driven by Alex Jeumard, Bilbon's employee. The jury found Jeumard seventy percent negligent and Waltrip thirty percent negligent, and also found Waltrip and Culver were engaged in a joint enterprise. The jury ultimately awarded Waltrip

$2,401.05 for past medical care, $160.80 for past loss of earning capacity, and $100 for past physical pain and mental anguish, but did not award future damages. The jury awarded Culver $773.93 for past medical care, $300 for past loss of earning capacity, and $100 for past physical pain and mental anguish. No questions were propounded regarding future damages for Culver.

The record before us reflects that in its first attempt at reaching a verdict, the jury awarded neither Waltrip nor Culver any damages for past physical pain or mental anguish. Prior to the jury's release by the trial court, counsel for Bilbon indicated to the trial court that the jury's response to the past physical pain and mental anguish issue was in conflict with its response for past medical care. Counsel for appellants took issue with this and at one point moved for the trial court to accept the "0" damages verdict. After hearing arguments of counsel, the trial court determined a conflict did exist and instructed the jury as follows:

.... [T]he law in the State of Texas says that if you award damages for medical expenses, you *must* award some amount of damages for physical pain and mental anguish. The amount you choose is within your discretion. (emphasis added)

After further deliberation, the jury sent out the following note:

Please review our corrections. If correct, please let us know—also, if incorrect—let us know how to do this correctly.

The trial court responded:

The court cannot direct you in your answer. If the sum of money you have written into the verdict correctly reflects your verdict then indicate such by signing the attached signature page.

Appellants' counsel asserted that a second verdict form was sent out with the jury's note. No verdict form was attached to the jury's note in the clerk's record. Subsequently, the jury returned its ver-

dict, determining that Waltrip and Culver should be paid $100 each for past physical pain and mental anguish. The trial court entered judgment on this verdict. Appellants filed a motion for new trial alleging the following: the trial court should have accepted the first jury verdict; all of the jury verdicts are against the great weight and preponderance of the evidence; and there was newly discovered evidence—Waltrip had post-trial neck surgery. No order was entered on appellants' motion for new trial.

After filing their notice of appeal, appellants filed a "Motion for New Trial, or, in the Alternative, to Obtain Complete Record" with this Court. The motion alleged the jury's "second" verdict (the one allegedly attached to the jury note) was not accepted by the trial court and, though not included in the clerk's record, could be reconstructed. This Court ordered that the appeal be abated and the cause remanded to the trial court to determine if an accurate copy of the jury's "second" verdict form could be filed. At a hearing held by the trial court on remand, the trial court's clerk testified that when the jury returned for further deliberations because of the perceived conflict, she sent the original form (that had already been answered and written on) back to the jury. She provided only a new signature page. For preparation of the transcript for appeal, she put the second new signature page with the re-deliberated verdict. She further testified that when the jury changed its answers from zero to $100 for each of the appellants, it did so on the original, and only, verdict form, and, therefore, there were no verdict forms missing from the appellate record.

That mystery solved, we move on to address appellants' four points of error. Points of error one and two are worded as follows:

Point of Error One: Since "Verdict I," although against the great weight and preponderance of the undisputed evidence, was not "defective" as contemplated under Tex.R. Civ. P. 295, the Court erred in refusing to accept "Verdict I" and instead directing the jury to return a different verdict.

Point of Error Two: The interaction between the Court and jury, particularly the Court's instruction to return a different verdict and the jury's professed desire to return a verdict that was "correct," caused the rendition of a tainted and improper verdict upon which Judgment was entered.

The gist of appellants' complaints under points of error one and two can be found from the following excerpt taken from their appellate brief:

Since there can be no argument that "Verdict I" was incomplete or unresponsive, the only ground upon which "Verdict I" might have been refused was that the answers to the questions were "in conflict". [sic] However, notwithstanding colloquial use of the word "conflicting", [sic] i.e., in the sense of "inconsistent," the *legal* test for conflict is well settled:

A conflicting jury finding will not prevent the rendition of judgment and require a mistrial unless the findings, considered separately and taken as true, would compel the rendition of different judgments. *The apparently conflicting answers must be such that one answer would establish a cause of action or defense while the other would destroy it. The test is whether taking the finding alone in the one instance, a judgment should be entered in favor of the plaintiff; and taking it alone in the other, a judgment should be entered in favor of the defendant.* [If this is the case], then the answers are fatally in conflict.

*Compton v. Polonski,* 567 S.W.2d 835 (Tex.Civ.App.—Corpus Christi 1978, no writ) (reversing and remanding for new trial) (emphasis added) (citing *Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985 (1949)).

In addressing allegations of conflicting jury answers, the Texas Supreme Court has been quite consistent. The trial court must reconcile apparent conflicts in the jury's findings if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole. *See Huber v. Ryan,* 627 S.W.2d 145, 145–146 (Tex.1981); *Bender v. Southern Pac. Transp. Co.,* 600 S.W.2d 257, 260 (Tex.1980); *Traywick v. Goodrich,* 364 S.W.2d 190, 191 (Tex.1963); *Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985, 989 (1949). A court is under the duty to reconcile conflicting jury findings if at all possible. *Traywick,* 364 S.W.2d at 191. "It will never be presumed that jurors intend to return conflicting answers, but the presumption is always to the contrary. Courts properly refuse to strike down answers on the ground of conflict, if there is any reasonable basis upon which they may be reconciled." *Casualty Underwriters v. Rhone,* 134 Tex. 50, 132 S.W.2d 97, 99 (1939). Indeed, where there is no fatal conflict in the jury's answers, a trial court judge has *no discretion* in entering a judgment on the verdict. *See Traywick,* 364 S.W.2d at 191. If the answers cannot be reconciled, then TEX.R. CIV. P. 295 comes into play. Rule 295 provides, *inter alia,* that if a jury's answers are in conflict, the trial court "shall" instruct the jury in writing and in open court of the nature of the conflict, provide the jury with such additional instructions as may be proper, and then allow the jury to deliberate further. The word "shall" means Rule 295 is mandatory.

In the instant case, the record does not reflect what was discussed at the bench conference between the parties and the trial court immediately following the reading of the jury's answers to the submitted issues. The discussion we do have before us does not indicate that anyone raised the initial requirement for the trial court to reconcile the jury's answers when they appear to be in conflict. Of course, appellants' contention was that there was no conflict in the answers; instead, the problem was that the evidence to support the jury's answers of zero damages for appellants' pain and suffering was insufficient. *See infra* note 4.

In deciding whether there was a conflict in the jury's answers, we are guided by the same rules that govern a trial court's determination. As noted above, the Supreme Court has made clear that we are under a duty to reconcile conflicting jury findings "if at all possible." *Huber,* 627 S.W.2d at 145. A court may not find conflict if there is any reasonable basis on which the finding can be reconciled. *Id.* at 146.

In *Huber,* the Supreme Court reversed the holding of the court of appeals that "failure of the jury to award damages for pain and mental anguish in the past is in fatal conflict with the affirmative findings of injury and loss of earning capacity in the past." *Id.* at 145. The *Huber* case is somewhat unique in that the reporter's record was missing from the record on appeal. *Id.* Nevertheless, the Supreme Court vigorously engaged itself in reconciling the jury's answers so as to dispel any hint of conflict between the jury finding of injury and the jury finding of zero damages for pain and mental anguish.

Similar to instructions accompanying the damages issues in *Huber,* the instructions in the instant case included the following directives to the jury:

> Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.
>
> . . . .
>
> Do not include any amount for any condition resulting from the failure, if any, of Eric Culver or Ethel Estelle Waltrip to have acted as a person of ordinary prudence would have done under the same or similar circumstances in caring for and treating his injuries, if

any, that resulted from the occurrence in question.

The record before us contains ample evidence that both x-rays and MRI results indicated that appellant-Waltrip's cervical spine was in a state of "mild degenerative facet arthropathy at the level C–6 through seven and C–7 through T–1." Waltrip's degenerative condition existed prior to the day of the collision. Waltrip's medical expert described "degenerative facet arthropathy" as an early sign of arthritis, and not an uncommon condition for a person in their fifties. The following colloquy between counsel for appellee and appellant's medical expert is quite compelling on this issue:

Q. In fact, do you know what the percentage is of people in their Fifties who have unusual findings on their MRI and maybe have never even been in an accident?

A. Yes. It's about 23 percent.

Q. And those are people who have never had any—reported any symptoms whatsoever, correct?

A. That's correct.

Q. If Ms. Waltrip had come to you and said, "Doctor, I'm having neck pain. I've been a cashier for 20 years now. I'm in my Fifties" and if that's all the history that she gave you and you ordered this MRI and you saw these same findings, what would you attribute these MRI findings to?

A. I would attribute it to everyday wear and tear probably in a cashier's job.

The jury was, of course, entitled to believe that the history given by appellant-Waltrip to her medical expert was incorrect.

As pointed out by the court in *Huber*, the jury in the instant case may have considered the possibility that appellant-Waltrip was suffering pain from her "degenerative facet arthropathy" which may have been entirely unrelated to the July 18, 1994, collision, since the condition already existed prior to that date. On the other hand, as the Supreme Court noted in the *Huber* case, the jury could have believed that any pain appellant-Waltrip experienced from the collision could have been alleviated by proper care and treatment and that appellant-Waltrip failed to provide herself with such proper care and treatment. By faithfully following the trial court's instructions accompanying the issue quoted above, the jury reasonably could have found zero damages for pain and mental anguish, just as in *Huber*. Also as in *Huber*, here there was no definition of "injury." In *Huber*, the Supreme Court noted that in the absence of a definition of "injury," the jury could have interpreted the term "to include economic loss." *Huber*, 627 S.W.2d at 146. Finally, both medical experts agreed that their opinions were based on the history the plaintiff gave them. The jury was certainly free to disbelieve appellant-Waltrip, or some or all of the testimony of any witness, medical or otherwise.

■ We, therefore, find no conflict in the jury's award of full medical expenses for both appellants while at the same time finding that neither appellant merited damages for pain and suffering. Even though appellant-Waltrip's medical expenses included payment for pain medication administered by the emergency-room physician the day following the accident, the jury may have believed this was merely part of the diagnostic process by the physician in order to determine whether appellant-Waltrip suffered injuries for which pain medication would be efficacious. Appellant-Waltrip testified that the emergency-room doctor attributed her complaints to her age and indicated nothing was wrong with her. The jury may also have believed that the small cost of the pain medication, when compared to appellant-Waltrip's total medical expenses, was *de minimis* and not worthy of eliminating from the rest of the medical expenses. Waltrip's own testimony indicated that she would lose the normal functioning of her mental and physical faculties while

taking prescription pain medication. From all the evidence presented, the jury may have believed otherwise. The jury may have believed that Waltrip did not continue taking any pain medication after an initial dose simply because she was not in pain and had no need for it.

As noted above, when a party timely objects alleging conflicting answers in a verdict awarding zero damages for past pain and mental anguish while also awarding damages for medical expenses, the trial court has the duty, if at all possible, to reconcile the answers. Depending on the facts of the case, the answers may or may not be in conflict. Where a plaintiff's symptoms are totally subjective or where the fact of an objective, observable injury to a plaintiff is not tied to the incident in question, the jury may award medical expenses for diagnostic purposes and still disbelieve the plaintiff's complaints of pain and suffering.[1] For these reasons we find that the trial court erred in failing to reconcile the perceived conflict in the jury's answers to question numbers 4(A) and 4(D) with regard to appellants' *past* damages and medical care. The findings could be reconciled.

Upon our finding of error by the trial court, appellants contend that they are entitled to a new trial and cite us to our opinion in *Smith v. Weindorff,* 287 S.W.2d 740, 743 (Tex.Civ.App.—Beaumont 1956, no writ). Of course, *Smith v. Weindorff* was decided prior to the promulgation of the Texas Rules of Appellate Procedure which require the appellate court to perform a harm analysis before reversal of the trial court's judgment because of trial error. Tex.R.App. P. 44.1(a). In examining the record before us, we simply cannot say that the trial court's error in sending the jury back to re-deliberate the past physical pain and mental anguish issues for each appellant "probably caused the rendition of an improper judgment[.]" *Id.* This is so because the jury was essentially instructed by the trial court to award appellants some amount of money for their past pain and mental anguish.[2] The verdict that was eventually accepted by the trial court and the judgment rendered thereupon inured to the benefit of appellants. Furthermore, since there can be only one final verdict in a trial, that being the one received and accepted by the trial court and ordered filed

1. An award in that instance of "reasonable and necessary" medical expenses to *diagnose* the alleged injury is not inconsistent with the finding that no significant injury existed. It would be reasonable for a plaintiff to have her physical condition examined if she had been involved in something like a motor vehicle collision. We reiterate that the jury is free to believe or disbelieve the plaintiff's subjective complaints of pain or the testimony of any other witness, including her doctor—who in this case said he was relying on what the plaintiff told him.

2. The wording of the trial court's instruction to the jury to re-deliberate the past pain and mental anguish issues is not the law, as we have explained here. If there had been an irreconcilable conflict which required the jury to deliberate further to resolve it, the jury was free on redeliberation to either lower the medical expenses to be consistent with the "$0" answer for past pain and mental anguish or to award some amount for the past pain and mental anguish to mirror the medical expense award which necessarily included

a finding of pain due to the accident, as opposed to, for example, diagnostic purposes.

At any rate, the trial court's statement of the law is inconsistent with the standard of review articulated in *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986), whereby reviewing courts are to consider and weigh all of the evidence in a case, both evidence that supports a vital fact and evidence that disproves its existence, and reversal is in order *only* if the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. The law does not automatically assume that an award of medical expenses is necessarily in conflict with a zero award for pain and suffering. The law does not automatically assume that this finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. For purposes of this case and all future cases, strict application of the so-called automatic "zero damages rule," of which the language of the trial court's instruction to the jury would be an example, is explicitly disapproved by this Court.

by him, the verdict containing the "$100" award for appellants from which judgment was rendered is the only proper one before us for purposes of this appeal. *See McCarty v. Morrison,* 468 S.W.2d 350, 352 (Tex.1971). We have no cross-point from Bilbon complaining of the jury's revised award to each appellant of $100 for past pain and mental anguish. Indeed, because Bilbon set the entire sequence of events in motion by complaining of the "conflicting answers," it is undoubtedly estopped from complaining of the awards. We therefore overrule points of error one and two.

■ Point of error three is a factual insufficiency complaint. When a party attacks a jury finding concerning an issue or issues upon which he had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In examining such a challenge, the reviewing court must first examine the record to determine if there is some evidence to support the finding; if such is the case, then the reviewing court must determine, in light of the entire record, whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or whether the great preponderance of the evidence supports its nonexistence. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We are mindful that in such circumstances the jury may have simply not been convinced by a preponderance of the evidence. *See Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988). In that instance, we recognize

that the reviewing court may not reverse the judgment simply because the court concludes that the evidence merely preponderates toward an answer more favorable to the appellant. *Id.* The reviewing court may only reverse where the great weight of the evidence supports an affirmative answer. *Id.*

■ The process of awarding damages for amorphous, discretionary injuries, such as mental anguish and pain and suffering, is inherently difficult because the injury constitutes a subjective, unliquidated, nonpecuniary loss. *See Brookshire Bros., Inc. v. Wagnon,* 979 S.W.2d 343, 354 (Tex. App.—Tyler 1998, pet. denied). Because there are no objective guidelines to assess the money equivalent of such injuries, the jury is given a great deal of discretion in awarding an amount of damages it determines appropriate. *See Texarkana Mem'l Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 841 (Tex.1997); *Duron v. Merritt,* 846 S.W.2d 23, 26 (Tex.App.—Corpus Christi 1992, no writ). We agree with the recognition of "the difficulties inherent in an appellate court's review of discretionary damages." *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 85 n. 2 (Tex.App.—El Paso 1992, no writ).

■ In the instant case, we are essentially presented with a complaint of the inadequacy of the jury's award to appellants for their past physical pain and mental anguish.[3] The presence or absence of "physical pain" is inherently subjective to the individual. Appellants in their brief liberally make use of the terms "uncontradicted" and "corroborated" when referring

---

3. This is not the first time we have considered this or similar issues. While at times not a model of consistency, we believe we have steered clear of a "strict application" approach in favor of a "case by case" examination. *Tarver v. County of Jasper,* 927 S.W.2d 795 (Tex.App.—Beaumont 1996, no writ); *Davis v. Davison,* 905 S.W.2d 789 (Tex.App.—Beaumont 1995, no writ); *Tate v. Sharp,* 831 S.W.2d 899 (Tex.App.—Beaumont 1992, no writ); *Williamson v. M & E Food Mart, Inc. # 2,* 731 S.W.2d 740 (Tex.App.—Beaumont), judgment set aside, 742 S.W.2d 276 (Tex. 1987); *State Highway Dep't v. Pinner,* 531 S.W.2d 851 (Tex.Civ.App.—Beaumont 1975, no writ); *Bazzano v. Ware,* 530 S.W.2d 650 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.); *Angelina Cas. Co. v. Jones,* 493 S.W.2d 247 (Tex.Civ.App.—Beaumont 1973, no writ); *Dupree v. Blackmon,* 481 S.W.2d 216 (Tex.Civ. App.—Beaumont 1972, writ ref'd n.r.e.); *Smith v. Weindorff,* 287 S.W.2d 740 (Tex.Civ. App.—Beaumont 1956, no writ).

to evidence that they, and particularly appellant-Waltrip, experienced significant pain as a result of the collision. However, there is no evidence in the record of any observable injuries to either appellant. The jury was free to reject the testimony of both appellants as to the existence of, amount or severity of their pain. All of the remaining testimony concerning pain allegedly suffered by the appellants was *opinion* testimony from both lay and expert sources.

■■■■■ The general rule as explained by the Supreme Court is that opinion testimony, even when uncontroverted, does not necessarily bind the jury.

> [T]he judgments and inferences of experts or skilled witnesses, even when uncontroverted, are not conclusive on the jury or trier of fact, unless the subject is one for experts or skilled witnesses alone, where the jury or court cannot properly be assumed to have or be able to form correct opinions of their own based upon evidence as a whole and aided by their own experience and knowledge of the subject of inquiry.

*McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986) (citing *Coxson v. Atlanta Life Ins. Co.,* 142 Tex. 544, 179 S.W.2d 943, 945 (1944)). We believe that the presence or absence of pain, based on the *subjective* complaints of an individual, is not a subject for experts or skilled witnesses alone. For example, in this case both experts conceded that their opinions were dependent on the accuracy of the complaints and the credibility of the appellants. In the instant case, the jury was free to disregard both expert and lay witnesses who testified regarding appellants' physical pain and mental anguish. The jury was capable of determining the "truth" from the evidence as a whole with regard to the presence and extent of any physical pain and mental anguish suffered by appellants. We have discussed some of that evidence in the record in ruling that no conflict existed in the jury's findings. We cannot say that the jury's award of $100 to each appellant for past physical pain and mental anguish is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Appellants simply failed to carry their burden of proof and persuasion. Point of error three is overruled.[4]

■■■■ Appellants' final point of error complains of the trial court's failure to grant a new trial based upon "newly discovered evidence." The record reflects that the jury returned its verdict on June 11, 1998, and it was filed on that date by the district clerk. Thereafter, Bilbon filed a motion to enter judgment on June 24, 1998. The judgment, however, was not signed and filed until November 4, 1999. In the interim period of approximately one year and five months, appellant-Waltrip apparently underwent surgery to the part of her neck she testified had given her pain. In their brief, appellants contend that appellant-Waltrip's surgery "make[s]

---

4. While we have fully addressed this point of error, we nonetheless are somewhat perplexed by appellants' positions *vis-a-vis* the initial verdict. Counsel for appellants explicitly represented to the trial court that the first verdict in which the jury awarded "$0" damages for past pain and mental anguish was not defective, nor incomplete, nor in conflict, and was in full compliance with TEX.R.CIV.P. 295. Accordingly, appellants' counsel moved the trial court to accept the verdict, *but* did not want the trial court to enter judgment on the verdict. As already pointed out, a trial court has a ministerial duty to enter judgment on an otherwise proper verdict. *See Traywick,* 364 S.W.2d at 191. Therefore, appellants' counsel appears to us to have taken an inconsistent position by requesting that the trial court accept the verdict while at the same time attacking the sufficiency of the evidence to support the answers contained in the verdict. As we appreciate the cases, an evidentiary analysis is involved in a trial court's duty to reconcile apparent conflicts alleged to be present in a jury's verdict. *See Huber,* 627 S.W.2d at 145–146; *Bender,* 600 S.W.2d at 260. In urging the trial court to accept the verdict based upon Rule 295, appellants came close to waiving appellate analysis of their insufficient evidence claim. *See Litton Indus. Prods., Inc. v. Gammage,* 668 S.W.2d 319, 321–22 (Tex.1984).

clear that Plaintiff's complaints and pain were of such severity that a local doctor felt it necessary and in her best interest to proceed with a surgery to relieve her symptoms."

▉ A trial court's action on a motion for new trial is governed by an abuse of discretion standard. *Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) (orig. proceeding). In the context of newly-discovered evidence, the guiding rules and principles are clear: "At the very least, the movant must bring forward non-cumulative evidence of which the movant did not become aware, and could not with the exercise of diligence have become aware, until after trial, and this newly-discovered evidence must be so material that it would probably produce a different result." *See Smith v. Levine,* 911 S.W.2d 427, 433 (Tex.App.—San Antonio 1995, writ denied). In the instant case, appellant-Waltrip obtained a second opinion from a local physician, Dr. Alvin Larkin, over one year *after* the trial concluded. Apparently after examining appellant-Waltrip, Dr. Larkin felt surgery was in order. Yet the various medical exhibits attached to appellants' motion for new trial do not indicate how any of this is newly-discovered. All that is apparent is that Waltrip continued to complain of the same things she was complaining of, and testified to, during trial, and that a doctor felt surgery would aid in ridding Waltrip of her symptoms. Furthermore, Dr. Larkin could only express his opinion with regard to the cause of any pain being experienced by appellant-Waltrip as follows: "It is my opinion that the accident *may* have contributed to the problem causing her present symptoms." (emphasis added) A possibility is not sufficient; reasonable medical probability is required. *See Maritime Overseas Corp. v. Ellis,* 886 S.W.2d 780, 802 (Tex.App.—Houston [14th Dist.]), *aff'd,* 971 S.W.2d 402 (Tex.1998). We also find appellants' exhibits are not so materially compelling that a different result would probably be produced upon presentation to a different jury on re-trial.

▉ Bilbon's brief refers us to a case decided by this Court in 1962, *McCardell v. Hartford Accident & Indem. Co.,* 360 S.W.2d 831 (Tex.Civ.App.—Beaumont 1962), *aff'd,* 369 S.W.2d 331 (Tex.1963). In *McCardell,* the plaintiff received an adverse answer from the jury as to whether or not he had suffered a ruptured disc from being kicked by a mule. *Id.* at 832. At a subsequent hearing on McCardell's motion for new trial, one of his doctors testified that he performed surgery on McCardell's back immediately upon conclusion of the trial and found a ruptured disc. Nevertheless, the trial court refused to grant McCardells' motion for new trial based upon newly-discovered evidence. In finding no abuse of discretion by the trial court, we noted that for us to hold otherwise would open the door in all similar causes for a claimant to wait to see if the jury verdict is adverse and then submit to an operation in order to procure "new" evidence for a motion for new trial. *Id.* at 833. We found such a scenario to "result in an intolerable situation." *Id.* While we do not find *McCardell's* reasoning to be overwhelmingly compelling, we are very reluctant to find additional medical treatment to be "newly discovered evidence" so as to be a sufficient basis for a new trial. Medical treatment continues in many cases after a trial is conducted. Continuing medical treatment or a second opinion should not by itself be considered newly-discovered evidence sufficient to justify a new trial. Re-trial would never end. There was no abuse of discretion on the part of the trial court by allowing appellants' motion for new trial to be overruled by operation of law. Point of error four is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.

BURGESS, Justice, concurring and dissenting.

I concur in part and dissent in part. I believe there was a fatal conflict in the jury's findings where, as here, it awarded damages for past medical expenses and wages, but did not award any damages for past pain and mental anguish. *See Lee v. Huntsville Livestock Servs. Inc.*, 934 S.W.2d 158 (Tex.App.—Houston [14th Dist.] 1996, no writ). Where the jury's answers to questions are in conflict, the court is required to instruct the jury regarding the nature of the conflict, provide additional instructions as may be proper, and retire the jury for further deliberations. *See* TEX.R. CIV. P. 295. Here, the trial court followed the procedure contemplated by Rule 295 and did not, as the majority opines, fall into error. Therefore, I concur in the overruling of points of error one and two.

As to point three—appellants' factual sufficiency point—I respectfully dissent in part. To decide whether the evidence is factually sufficient, we must weigh all of the evidence in the record. *See Sears, Roebuck & Co. v. Kunze*, 996 S.W.2d 416, 422 (Tex.App.—Beaumont 1999, pet. denied) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996)). "Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz*, 917 S.W.2d at 772. In addition, we remember the jury is the trier of fact, and, as such, is the sole judge of the credibility of witnesses and the weight to be attached to their testimony. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998). However, where the appellate court's fact jurisdiction "is invoked by a factual sufficiency challenge and manifest injustice is clearly apparent," the appellate court "should not hesitate to reverse and remand, even if some evidence of probative force supports the verdict." *Mitchell v. Southern Pac. Transp. Co.*, 955 S.W.2d 300, 304–05 (Tex.App.—San Antonio 1997, no writ) (citing *Tarrant County*

*Water Control & Improvement Dist. v. Crossland*, 781 S.W.2d 427, 436 (Tex. App.—Fort Worth 1989, writ denied), *overruled in part*, 870 S.W.2d 21 (Tex. 1994)). "This is especially true where it is shown that a jury completely disregarded undisputed evidence and admissions in favor of general conclusory statements denying negligence." *Mitchell*, 955 S.W.2d at 305 (citing *Caterpillar Tractor Co. v. Cropper*, 767 S.W.2d 813, 817 (Tex.App.—Texarkana), *writ denied, improvidently granted*, 777 S.W.2d 709 (Tex.1989)). While "[i]t is the province of the jury to decide the issues which are raised by conflicting evidence, ... where there is evidence upon an issue and there is no evidence to the contrary, then the jury has not the right to disregard the undisputed evidence and decide such issue in accordance with their wishes." *Texas Dep't of Transp. v. Guerra*, 858 S.W.2d 44, 47 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (citing *Texas & N.O.R. Co. v. Burden*, 146 Tex. 109, 203 S.W.2d 522, 530 (1947)).

As to her injuries, Waltrip testified she remembered hearing a "loud sound like an explosion[.]" She started to turn and then realized there was something wrong. She could not get out of the car because she was having "real bad pains in the back of [her] neck all the way up into the side of [her] head." She "started having real bad spasms and pains in [her] lower back." The ambulance drivers removed her from the car and transported her to the hospital, where she was x-rayed and released. However, she continued to have problems. She could not raise her head and her throat swelled so she could not swallow liquids. She had to return to the emergency room to have her throat and neck checked. She then was prescribed some pain medication. She was unable to return to work for four to five days. When she did return, she was in constant pain. Her neck hurt all across the back of her head and she used various over-the-counter medications. The pain has continued since the accident and has even gotten worse as

she awakens frequently during the night to take pain medication. She works for Albertson's as a cashier, and after standing for a few hours, her neck bothers her. The pain at work has gotten worse since the accident. Waltrip also testified she had difficulty taking prescription pain medication. She has a "low tolerance," as even a "Tylenol 2" causes her to be so sleepy that she cannot work. She cannot take time off from work because she supports herself and has bills to pay.

On cross examination, Waltrip admitted that after the emergency room visits she did not see a doctor for over two weeks, and then saw Dr. Martin Haig, to whom her attorneys referred her. She next visited Dr. Haig approximately ten months later. Her third visit occurred about five months after the second, and her fourth about a month later. She did not visit the doctor again for approximately a year and a half.

Dr. Haig diagnosed Waltrip with neck and back injuries, which he related to the accident, based on the history he received from Waltrip, his experience, and his review of her MRI. During Waltrip's first visit to Dr. Haig, he examined her neck and found she had "some fullness, puffiness, at the base of the neck on each side, which probably was swelling from some type of a neck inflammation or swelling that had taken place in a recent accident. It was greater on the left." Dr. Haig prescribed her medication and told Waltrip to "check back … as necessary." Approximately fifteen months after her first visit, Dr. Haig ordered a cervical MRI, based on Waltrip's complaints and his examination of her neck, which revealed some stiffness. Dr. Haig determined Waltrip's bulging disk was not from "everyday wear and tear." It was "not one of a disk space that's worn out with the passage of time. The MRI was a ligament bulge which … occurred from an accident of some type." Dr. Haig further testified that "the important thing here is [Waltrip] had no complaints of neck and low back

pain of a disabling nature until the auto accident."

According to Dr. Haig, the MRI showed a mild to moderate generalized bulging in the C5–6 disc, and also showed evidence of arthritis in the C5–6 and C6–7 levels. Dr. Haig also confirmed Waltrip had degenerative changes and bony calcification in her lumbar spine, occurring before the accident. Dr. Haig confirmed further that the MRI (taken over fifteen months after the accident) showed no "acute" or recent abnormalities. He admitted that if Waltrip had come to him, complaining of neck pain and told him she had been a cashier for twenty years and was in her fifties, he would have attributed the bulging disc to everyday wear and tear. He agreed it was not uncommon for a person with degenerative disc disease to also have degenerative changes in other areas of the spine. Dr. Haig also acknowledged he had seen many patients referred to him by the appellants' counsel.

Dr. Stephen Esses, Bilbon's medical expert, examined Waltrip and found no objective evidence of injury. He considered Waltrip's bulging disc shown on the MRI not to have been caused by the accident, but rather to be a normal, degenerative condition consistent with her age. He further testified that, assuming the history given to him by Waltrip regarding an injury to her neck and back were true, she probably sustained a soft tissue injury or "strain." Such muscle strains should be resolved within four to twelve weeks. He also noted that the type of work Waltrip did would increase stress on the back and neck. In cross examination, Dr. Esses testified: "I've indicated in my testimony that I believe this patient may well have had symptoms following the wreck on the basis of a soft tissue injury to the neck. I've indicated in deposition that it's my opinion that those symptoms would have resolved within four to six weeks." Dr. Esses was not provided any medical records showing that Waltrip had neck symp-

toms prior to the accident, but thought he would have received them if they existed.

Edward Cormier witnessed events occurring after the accident. He heard brakes squealing, and also saw Waltrip after the accident. He explained:

> ... I knew she was suffering with the neck. She had a neck pain, and they [ambulance attendants] had to come over there and try to get her out.... We knew that it was a ... pretty bad accident, because of what I had seen when she was in the car an[d] she was holding her neck.

The evidence regarding whether Waltrip's bulging disc and associated pain were caused by the accident is certainly disputed. What is not disputed, however, is that Waltrip had some neck pain immediately after the accident as described by Cormier and she did not have neck complaints prior to the accident. Moreover, Cormier's testimony supports the history Waltrip gave Dr. Esses regarding neck pain immediately following the accident. Dr. Esses testified that if the history given to him were true, she probably sustained a strain that should be resolved within four to twelve weeks. While the jury could have disregarded Waltrip's subjective complaints, it still had to consider the proper amount of damages to award her for at least four weeks of pain associated with a strain inasmuch as Waltrip presented uncontroverted evidence of an objective injury. The jury's award to Culver of $100 highlights the problem. He had only subjective complaints, saw Dr. Haig only twice, and never asked for pain medication. Thus, in finding that Waltrip was entitled only to the sum of $100 for past pain and mental anguish, the jury appears to have disregarded undisputed evidence regarding her injuries. Consequently, its finding on Waltrip's past pain and mental anguish is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. I would sustain point three as it relates to Waltrip, but overrule it as it relates to Culver.

In that vein, I would not consider that part of point four in which appellants claim the trial court erred in refusing to grant a new trial because of the post trial evidence of Waltrip's related surgery; I would remand Waltrip's claim for a new trial.