In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-09-00078-CV


____________________



NATHANIEL STEPHENS, Appellant



V.



ASHLEIGH PETRY, Appellee 


 




On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-179,569






MEMORANDUM OPINION



 Appellant Nathaniel Stephens sued appellee Ashleigh Petry for injuries he allegedly
sustained in an automobile accident. The jury found that Petry's negligence was a proximate
cause of the occurrence, but awarded no damages to Stephens. Stephens then filed this
appeal, in which he contends in his sole issue that because there was uncontroverted expert
evidence of an objective injury, the jury's failure to award damages is against the great
weight and preponderance of the evidence. We affirm.



The Evidence


 Officer Owens of the Beaumont Police Department testified by video deposition. 
Officer Owens testified that he investigated the accident involving Stephens and Petry and
prepared an accident report. According to Officer Owens, Petry's vehicle rear-ended
Stephens's vehicle. The accident occurred during daylight hours on a dry, concrete road, in
cloudy weather. Officer Owens's report indicated that the accident occurred in the 1900
block of Cottonwood, but he testified it is possible that the accident occurred on Concord
Road, and the parties turned onto Cottonwood Road after the accident to get out of the line
of traffic. Officer Owens observed damage to the front of Petry's car, as well as the back of
Stephens's car. Petry's car had damage to the front grill area, from one side to the other, and
Stephen's vehicle had damage distributed throughout the back of the vehicle. After speaking
with the parties and observing the vehicles, Officer Owens determined that Petry was at fault, 
and he cited Petry's failure to control speed as a factor that contributed to the accident. 
Neither party needed medical assistance at the scene.

 Petry also testified by video deposition. Petry testified that she rear-ended Stephens's
vehicle on Concord Road when Stephens slowed down for a car that was turning in front of
him. According to Petry, the sun was "blinding" her, so she did not see the brake lights on
Stephens's vehicle. Petry opined that the accident could have been avoided if Stephens had
not "decided to slow down too slow." Petry testified that her car was not damaged at all, nor
was Stephens's vehicle. Petry testified that Officer Owens was only at the scene for five to
eight minutes, and that she felt that he did not do a good job investigating the accident.

 Petry's counsel then called her to the stand. Petry explained that the accident occurred
on Concord Road. In addition, Petry testified that the weather was not completely cloudy on
the day of the accident. Petry testified that the sun "was coming from behind the car; and it
was reflecting off of . . . [Stephens's] bumper. . . . I just couldn't see any brake lights to see
when someone was actually slowing down." According to Petry, when her vehicle struck
Stephens's vehicle, she was traveling at approximately five miles per hour. Petry testified,
"My car had absolutely no damage. No paint was gone. When I took my car home and told
my family what happened, they didn't believe me because my car had no damage. Looking
at the van, the metal bumper had no damage, not even a bump." Petry testified that after the
accident, she and Stephens spoke, and Stephens did not appear to be injured, nor did he tell
her that he was injured. Finally, Petry explained that she was not injured.

 Stephens testified that he has worked for the Beaumont Independent School District
(BISD) as an electrician for twenty years. According to Stephens, when the accident
occurred, he was traveling north on Concord for his employer, and a vehicle in front of him
was turning left, so he slowed down. Stephens explained that "all of a sudden, I was just
rear-ended with a severe impact." Stephens testified that his work van was damaged, and the
rear bumper had to be replaced. Stephens testified that he was at the accident scene for
approximately one hour, and although he did not recall how long Officer Owens stayed, he
opined that Officer Owens stayed for longer than five to eight minutes. When asked whether
he was injured, Stephens testified that although he did not need to be transported by an
ambulance, he "wanted to be checked out" because he felt "some stiffness" in his neck. 
Stephens asked that BISD take him to the emergency room, and he learned that he had
sustained a neck injury and received medication. Stephens also sought treatment from Dr.
McNeill at Beaumont Bone & Joint Institute, and he received a more thorough examination,
an MRI, and six weeks of physical therapy. Dr. McNeill's diagnosis was that "the work-related accident of September 5th, 2006, has caused an exacerbation of a preexisting problem
in his neck." Stephens testified that Dr. McNeill referred him to Dr. Redko, who gave him
a series of injections for the pain in his neck.

 Stephens testified that he was in another accident on December 23, 2007. According
to Stephens, his level of pain did not change after the second accident. Stephens testified that
he still suffers from pain, and that he has not been able to enjoy his hobbies as much since
the accident with Petry. Stephens explained that he has to use a neck roll on his pillow and
certain sleep positions are uncomfortable, so he does not "sleep soundly through the night
totally." When asked how his quality of life has changed as a result of the accident, Stephens
testified,

 My quality of life has changed in that I'm a craftsman and I actually
enjoy what I do. I'm an electrician. And I can no longer approach what I do
with the same type of zeal that I had before the accident. I am having to use
the physical therapist directives as to doing some things to relieve discomfort
for my neck. I work on ladders a lot. I have to . . . step back from doing the
job along those lines.


 When performing tasks at home that I would take for granted, the pain
and the discomfort, I have to allow for that. It's always there. If I exert myself
somewhat, a little more than usual, then that makes the pain even worse. So,
I had no real problems with my neck as far as that pain goes, yet since that
accident it's something that is constant. It's there with me every[]day.


Stephens explained that although he had not missed work very much since the accident
because of his financial obligations, the pain from the accident affects his work, and working
exacerbates his pain. Stephens testified that the only way he could have avoided the accident
was to have "stayed at home."

 On cross-examination, Stephens testified that he has a somewhat long history of
problems with his back, and that although he did not recall having recurrent pain in the back
of his skull starting in 1993, he would not dispute it if his medical records so reflected. 
Stephens also testified that in 2001, he jumped off of a ladder and injured his lower back. 
In addition, Stephens testified that in 2001 or 2002, he had been diagnosed with narrowing
of the cervical interspaces, degenerative disc disease, and impingement on the central canal. 
Stephens also explained that he was hospitalized in 2002 for sharp pain in his trunk that
radiated to his left shoulder and neck, as well as numbness in his legs. According to
Stephens, his doctors had diagnosed him with degenerative lumbar disc and degenerative 
cervical disc problems. Stephens also had another MRI on January 31, 2004, at the
Methodist Hospital in Houston, Texas, and that MRI revealed degenerative problems in his 
neck at the C2-3, C3-4, C4-5, C5-6, 6-7 and 7 and T1 levels. Another MRI on November
7, 2005, revealed the same problems. Stephens testified that after 2005, he knew he had
some discs that were actually touching the spinal canal.

 Stephens testified that he did not photograph the damage to his BISD van. When
defense counsel asked him about BISD having no records of the bumper being replaced,
Stephens testified, "if you were to get our secretary and our mechanic, they would verify
what I'm telling you, that they did, indeed, replace the bumper on that van." Stephens
admitted that he did not see any damage to Petry's car. Stephens also testified that when he
went to the emergency room after the accident, he complained of shoulder pain, back pain,
neck pain, and headache, and he might have reported that he had been experiencing the
symptoms for four days. Stephens next sought medical care sixteen days later. In addition,
Stephens testified that no one has limited his work duties since the accident.

 Dr. Vladimir Redko testified by video deposition. Redko testified that he is a board
certified pain management physician. Redko first saw Stephens on December 11, 2006, after
Dr. McNeill referred him for intractable neck pain. Redko testified that Stephens had been
injured in a motor vehicle accident, and that Stephens had a preexisting condition with small
disc bulging, for which he was not actively seeking treatment. According to Redko, Stephens
had been doing reasonably well and continued to work until the accident occurred, but since
the accident, Stephens has been "in disabling pain." Redko testified that assuming that injury
means damage or harm to the physical structure of the body or the aggravation, acceleration,
or incitement of a preexisting condition, he believed, based upon reasonable medical
probability, that Stephens was injured in the accident with Petry. During some of Stephens's
visits, Redko noted that Stephens had muscle spasms in his neck. Redko testified that he had
treated Stephens with multiple epidural injections, which were a method of delivering
medication in the compartment of the spine where the nerves and discs of the spine come
together. Redko explained that the purpose of the injection is "to directly deposit the most
potent anti-inflammatory medication to the area where the inflammation is and reduce the
swelling." Redko opined that the collision with Petry had worsened Stephens's preexisting
neck conditions, and that Stephens will likely never be free of pain. Redko testified that he
has not viewed the MRIs of Stephens's neck and back before October of 2006 to determine
whether Stephens's condition changed since the accident, so he cannot fairly respond to
another doctor's conclusion that Stephens's spine had not structurally changed since the
accident.

 Dr. Walter R. Sassard, an orthopedic surgeon, also testified by video deposition. 
Sassard testified that he did not examine Stephens, and he did not review Stephens's MRI
films, but instead reviewed the MRI reports because the films were unavailable. Sassard
explained that he agreed with Dr. McNeill's opinion that the accident with Petry on
September 5, 2006, exacerbated Stephens's preexisting neck problem. Sassard testified that
he would "certainly agree that [Stephens] had acute change in his symptoms as a result of the
accident," and he opined that Stephens suffered an injury as a result of the accident. Sassard
opined that "Stephens sustained what would be considered as a soft tissue injury to his neck
and upper back." According to Sassard, the MRI report of November 7, 2005, describes
degenerative changes at virtually every disc level in Stephens's cervical spine, mild to
moderate hypertrophic changes, mild to moderate canal stenosis, and mild to moderate left
and right-sided neuroforaminal stenosis. Sassard compared that MRI report to the post-accident MRI report of October 17, 2006, which also details degenerative changes and disc
displacements, and he opined that the two reports "are describing exactly the same
condition." According to Sassard, Stephens "did not sustain any structural abnormality or
structural alteration of his body in this accident." Sassard also testified that, in his medical
opinion, the accident did not necessitate the epidural injections. According to Sassard,
patients with soft tissue injuries like Stephens's do not generally experience prolonged
symptoms, and nothing in Stephens's records indicates that his complaints are related to the
accident rather than the underlying degenerative changes in his spine.

Stephens's Issue


 In his sole issue on appeal, Stephens argues that because there was uncontroverted
expert evidence of an objective injury, the jury's failure to award damages is against the great
weight and preponderance of the evidence. (1) We must consider and weigh all of the evidence,
not just the evidence that supports the verdict. Maritime Overseas Corp. v. Ellis, 971 S.W.2d
402, 406-07 (Tex. 1998). We review the record to determine whether the verdict is so
against the great weight and preponderance of the evidence as to be manifestly unjust. See
Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003); Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986). We must bear in mind that the jury is the sole judge of the
credibility of witnesses and the weight to be given to their testimony. Golden Eagle Archery,
116 S.W.3d at 761.

 Although there is evidence that Stephens was injured in the accident, the jury may not
have believed that his pain, anguish, any necessary future medical care, and any physical
impairment resulted from the accident with Petry, but were instead caused by his preexisting
condition. Because the jury is the sole judge of the credibility of the witnesses and the
weight to be given to their testimony, it was free to accept or reject all or part of the
witnesses' testimony and the evidence. See id.; McGalliard v. Kuhlmann, 722 S.W.2d 694,
697 (Tex. 1986); see also Waltrip v. Bilbon Corp., 38 S.W.3d 873, 879 (Tex. App.--Beaumont 2001, pet. denied) (The jury is free to reject testimony, including even
uncontroverted expert testimony.). Therefore, we cannot say that the jury's failure to award
damages to Stephens for future medical care, past physical pain, future physical pain, past
mental anguish, future mental anguish, past physical impairment, or future physical
impairment was so contrary to the great weight and preponderance of the evidence as to be
manifestly unjust. Accordingly, we overrule Stephens's sole issue and affirm the trial court's
judgment.

 AFFIRMED.


 

 STEVE McKEITHEN

 Chief Justice


Submitted on December 11, 2009

Opinion Delivered March 11, 2010


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Stephens sought damages for future medical care, past physical pain, future physical
pain, past mental anguish, future mental anguish, past physical impairment, and future
physical impairment. He did not seek to recover damages for past medical expenses.